GEORGE W. TUCKER, Respondent, v. MISSOURI &
KANSAS TELEPHONE COMPANY, Appellant.

Kansas City Court of Appeals, June 29, 1908.

1. **MASTER AND SERVANT: Fellow-Servant: Pleading: Objection to Evidence.** Where a petition passes unchallenged by demurrer and is first assailed by objection to the introduction of evidence, its averments must be liberally interpreted in aid of the cause alleged; and a petition under review is held sufficient to show negligence in employing an incompetent fellow-servant and that the act of such servant caused the injury complained of.

2. ———: ———: ———: **Negligence.** The facts constitutive of a cause of action for the negligent employment and retention of an incompetent fellow-servant, are that the servant whose negligence caused the injury was incompetent, that the injury was caused by his incompetency, that the fact of incompetency was known to the master and the master thereafter negligently retained the servant.

3. ———: ———: **Negligence: Incompetency: Evidence.** Repeated acts of negligence may be introduced to show the incompetency of a fellow-servant where the series extend over a period of time thereby exhibiting the peculiar qualities and traits of the servant and his adaptation or want of adaptation to his position, or such incompetency may be shown by physical or mental infirmities, such as epilepsy which has shattered the mind and rendered it incapable of reasonably careful and prudent acts resulting in habitual careless and negligent conduct.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Battle, McCardle* and *Gleed, Hunt, Palmer & Gleed* for appellant.

(1) The court erred in admitting evidence that Tyner, the employee, who was alleged to have been incompetent, had had "fits" or was subject to "fits." There was no evidence that Tyner had a "fit" when the accident occurred, or that the alleged fact that he was subject

to "fits" had anything whatever to do with his alleged negligence. And with the first offer of evidence of this kind counsel for respondent disclaimed any intention of proving that the alleged "fits" had anything to do with the accident. (2) Even if the allegation of incompetency permitted the proof of fits, it was immaterial here because the specific act complained of was alleged to have been carelessly, negligently and recklessly done, and therefore incompetency in any other·respect would be immaterial for the reason that it would not contribute to the injury. Kliefoth v. Iron Co., 98 Wis. 495; Olson v. Lumber Co., 100 Fed. 384; Barney v. Pinkham (Neb.), 45 N. W. 694; Railroad v. Rowland (Tex.), 22 S. W. 134. (3) Regardless of the pleadings, proof of fits was inadmissible because it was not shown that the alleged fits had anything to do with the injury complained of. 12 Am. and Eng. Ency. Law, 918; Zumalt v. Railroad, 35 Mo. App. 661; McDermot v. Railroad, 73 Mo. 523; Kersey v. Railroad, 79 Mo. 362; Johnson v. Railroad, 114 Pa. St. 443; Herrington v. Railroad, 4 N. Y. Sup. 140; Railroad v. Davis (Tex.), 48 S. W. 570; Cosgrove v. Pittman, 103 Cal. 268; Inglehart v. Railroad, 29 N. Y. Sup. 425; Wright v. Railroad, 35 N. Y. 562; Campbell v. Wing, 5 Tex. Civ. App. 431; Kliefoth v. Iron Co., 98 Wis. 498. (4) The motion in arrest of judgment and the objection to the introduction of evidence under the petition for the reason that it did not state facts sufficient to constitute a cause of action should have been allowed and sustained, because there was no allegation in the petition to show directly or by inference that the alleged negligence of appellant in employing an incompetent servant or the alleged negligent act of that servant caused the injury complained of. Such an allegation was necessary. 14 Enc. of Pl. and Pr., 336. And the failure to make it was fatal. Kliefoth v. Iron Co., 98 Wis. 498; Haeussler v. Box Co., 49 Mo. App. 636, 13 Cyc. 173.

*Kelly, Brewster & Buchholz, C. E. Burnham* and
*W. E. Burnham* for respondent.

(1)   There is no dispute as to this proposition
of law, namely, that the master must use ordinary care
in employing and retaining competent and suitable ser-
vants.   This is a personal duty devolved upon the mas-
ter, and he is liable for a failure to perform this duty
resulting in injury to a fellow-servant. Williams v. Rail-
road, 109 Mo. 482; Dysert v. Railroad, 145 Mo. 83; Grube
v. Railroad, 98 Mo. 339; Maxwell v. Railroad, 85 Mo. 95;
Wood on Master and Servant, sec. 432; 12 Am. and Eng.
Ency. Law (2 Ed.), 1024; Railroad v. Brow, 65 Fed. 941;
Baulec v. Railroad, 59 N Y. 356, 17 Am. Rep. 325;
Davis v. Railroad, 20 Mich. 124; O'Hare v. Railroad,
95 Mo. 662.   (2)   Where a petition was bottomed upon
the negligent act of the master in employing and keep-
ing in its employ an incompetent servant, and the tes-
timony in the case showed that this servant was a brake-
man; that he was sent back to flag an approaching train
to keep it from running into his own train which was
standing still upon the track, and that he failed to take
his signal back a sufficient distance to afford any pro-
tection to his train; and where the evidence further
showed that prior to this negligent act of said servant,
he had not been guilty of any other specific act of neg-
ligence, it was held that the allegations of the petition
were supported and plaintiff was entitled to recover
upon the proof that said servant had been subject to
epileptic fits long prior to the accident and that this fact
was known to the defendant although no proof was
made that he was suffering from an epileptic fit at the
time of the negligent act complained of.   Baird v. Rail-
road, 64 Hun (N. Y) 14; 4 Thompson, Commentaries
on the Law of Negligence, sec. 4898.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant in the employment and retention in service of an incompetent servant whose negligence was the immediate cause of the injury. Verdict and judgment were for plaintiff in the sum of three thousand dollars and defendant appealed.

Defendant is engaged in the telephone business in Kansas City and at the time of the injury, June 1, 1905, maintained a "pole yard" where it prepared poles for installation in its telephone lines. A gang of laborers, among them plaintiff, was employed in this work. Poles received in the yard were piled horizontally and afterwards were dressed near the pile in which they had been placed. First, a workman called a "knotter" would roll one from the pile, using a canthook for that purpose and would chop off the knots with an axe. Then the pole would be laid on trestles where other workmen, called "shavers" would strip off the bark and make the pole smooth. Plaintiff was employed in the latter capacity and was at work near a lot of long, heavy poles which had been laid against a fence in a pile ten or twelve feet high and fifteen or sixteen feet deep at its base line. His position (directed by the foreman) placed him with his back towards the pile and where he might be struck by the rolling of a pole pulled down therefrom. To guard against injury from such cause to the men shaving the poles, it was made the duty of the "knotter" to call out a warning before he started to bring down a pole in order that they might leave their positions for places of safety. The evidence of plaintiff tends to show that he was injured by being struck on the leg by a rolling pole which the "knotter" negligently started without giving any warning. It is alleged in the petition that the "knotter" was a "careless, negligent, reckless and grossly incompetent man," that his habitual

carelessness and incompetency had been known to defendant; that on a number of prior occasions, he had rolled down poles without warning the men and thereby had threatened them with great injury; that the men had complained repeatedly to defendant of his carelessness, but that "defendant negligently kept the said Charles Tyner in its employ and engaged in the above-described work after it knew, or by the exercise of ordinary care should have known, that he was careless, negligent, reckless and grossly incompetent, and of the careless and negligent manner in which he performed his duties in and about said work; and that he was not a safe and suitable person to work in said position, and that he was liable to injure some of his fellow-workmen by the careless and negligent manner in which he handled said poles." Further, it is alleged "that while plaintiff and his companions were engaged in said work at said place at the foot of said pile of poles, said Charles Tyner carelessly, negligently and recklessly rolled a pole from the top of said pile without first giving any warning to the men below, including the plaintiff; that said pole struck plaintiff, and plaintiff's right leg was thereby broken and dislocated, . . . that the defendant carelessly and negligently failed to furnish plaintiff and his companions a reasonably safe place in which to work; that the place furnished plaintiff and his companions in which to work was dangerous and unsafe in this, to-wit: It was so close to said pile of poles that persons working at said place were in constant danger of being struck by said poles rolling from the top of said pile, . . . that he has been damaged by the wrongful acts of the defendant aforesaid in the sum of ten thousand dollars," etc.

Several members of the gang of workmen who were introduced as witnesses by plaintiff testified to prior negligent acts of a similar nature committed by the "knotter," and further testified that complaints of his

carelessness were made at different times by the men to the foreman who reproved the delinquent and threatened to discharge him.    But the greatest effort of plaintiff was directed to showing (over the objections of defendant) that the "knotter" was incompetent because he was subject to fits.    The principal grounds of the objections were that no such issue was represented by the pleadings and that as the injurious act was not committed while the "knotter" was in the throes of an attack, the disease could bear no causal relation to the injury.    At the threshold of the investigation of the subject, counsel for plaintiff was asked, "Do you expect to show that Tyner had a fit at the time of this alleged injury to the plaintiff?"    To which he replied, "No, sir, we expect to show that on a great many occasions he had fits there in the yards; that he would be engaged in one kind of work and would suddenly go to some other work, that the foreman would go after him and bring him back and talk to him and see that he started to work again; that he would be digging holes, and he would see a pole gang, a gang of street people shoveling out in the road, that he had no connection with, and he would break away and go down there and join them; that the foreman would go and get him and bring him back with his eyes rolling; we expect to show that in order to show that he was a man who should not have been put in this position."    The objections were overruled and the evidence admitted.    It is to the effect that Tyner, the knotter, was an epileptic and at various times before the injury to plaintiff had been the victim of nervous explosions, some in the form of fits, or convulsions, others in the form of a temporary mental aberration. No expert evidence was offered to show that the disease when not visibly manifest will impair the physical or intellectual vigor of the subject, but facts were adduced from which a reasonable inference might be

drawn that Tyner, though strong physically, was weakened mentally. Without going into details, it appears that he acted queerly at times, at other times was absent-minded, and that generally he worked with feverish energy, "like a man fighting fire," as one witness aptly expressed it.

All the facts brought out by plaintiff in support of his contention that Tyner was unfitted to the employment and that defendant continued him in its service after receiving knowledge of his unfitness are denied by the witnesses introduced by defendant, who depict him as industrious, efficient and careful, and who say that he gave the usual warning when he began to move the pole and that plaintiff had ample time to leave his position for one of safety had he given proper heed to the warning. The defenses interposed in the answer are a general denial and pleas of contributory negligence and assumed risk. At the close of plaintiff's evidence, and again at the conclusion of all the evidence, defendant requested the court to give an instruction peremptorily directing a verdict in its favor, but these requests were refused and the case was sent to the jury.

One of the propositions urged by defendant for a reversal of the judgment is that the cause of action stated in the petition is fatally defective "because there is no allegation in the petition to show directly or by inference that the alleged negligence of appellant in employing an incompetent servant or the alleged act of that servant caused the injury complained of." In the consideration of the questions involved in this proposition, we shall consider also those relating to the contention that the court erred in permitting plaintiff to put in issue the fact that Tyner was afflicted with epilepsy, since it does not appear, so defendant argues, that there was any causal connection between that fact and the in-

jury, nor that its existence bore any relation to the specific negligence alleged in the petition.

In our examination of the question of the sufficiency of the petition to state a cause of action, the principle rule of construction by which we are to be guided is that the averments of the pleading must be liberally interpreted in aid of the cause alleged. This rule obtains in all cases where the defendant suffers the petition to pass unchallenged by demurrer and answers to the merits. By such conduct, he declares, in effect, that the cause of action is pleaded sufficiently and thereby waives all objections except the one that the petition omits to state either directly or by reasonable intendment one or more facts elemental to the cause. We find in the petition the allegations that Tyner was habitually careless and reckless and was grossly incompetent; that his unfitness for the position was known to defendant, but, nevertheless, his employment in that position was continued; that he negligently and carelessly rolled the pole which struck and injured plaintiff and that the injury was the result "of the wrongful acts of defendant aforesaid." Obviously, the expression just quoted refers to the act of continuing to employ a servant known to be incompetent, as well as to that of being negligent in the performance of the duty to exercise reasonable care to furnish plaintiff a reasonably safe place in which to work, the breach of that duty being averred in the preceding paragraph of the petition. Reasonably interpreted, the allegations to which we have referred should be held to contain the assertion of a right to a recovery, the real foundation of which was the negligence of defendant in requiring plaintiff to work with an incompetent fellow-servant.

Facts constitutive of a cause of action of this character are these: First, that the servant whose negligence caused the injury was incompetent; second, that the injury was caused by the servant's incompetency;

third, that the fact of incompetency was known, or by the exercise of reasonable care should have been known to the master; and, fourth, that the master, after actual or constructive acquisition of such knowledge, negligently retained the servant.    All of these facts are indispensable, and a failure to plead and prove any of them is fatal to the maintenance of the action.    It is not enough for the servant to show that he was injured by the negligence of his fellow-servant.    The master is not liable for such negligence, nor does the fact that the fellow-servant was negligent in one instance, even tend to prove his incompetency.    Competent men may be, and too often are, negligent on some occasions.    To permit incompetency to be proved by the injurious act of which complaint is made would be to abrogate the fellow-servant doctrine and, in effect, to raise the fellow-servant to the relationship of a vice-principal.    Incompetency is a state or condition, the existence of which must be shown by other facts and circumstances.. A person may be said to be incompetent when he is incapacitated either by physical or intellectual deficiencies from properly performing the duties of his position. He may lack the requisite physical strength, endurance or handiness.    Possessing these, he may want in knowledge or skill.    Or thoroughly equipped with strength, knowledge and skill, his mental make-up or fixed habits may disqualify him from conforming to the standard of conduct imposed by the rules of law, because of a predisposition to carelessness, thoughtlessness or indifference to the rights and safety of others.    It is true there is a wide difference between negligence and incompetency.    As we observed, a competent man may be negligent on a given occasion, but equally is it true that incompetency may consist solely of habitual negligence.    A locomotive engineer who repeatedly runs past signals without heeding them is incompetent to run an engine, no matter how skillful or intelligent he may

be, and so a "knotter" who repeatedly and despite the
admonitions of his foreman rolls down telephone poles
without giving warning to those who stand in danger
from them is incompetent to discharge his duties prop-
erly for the simple reason that his habitual negligence
betrays a mental condition which incapacitates him
from measuring up to the standard of reasonable care.

The authorities are not entirely harmonious on the
subject of what will constitute competent evidence of
habitual carelessness. In some jurisdictions, it has been
held that evidence of prior specific acts of negligence
cannot be introduced to show the incompetency of the
fellow-servant, for the reason that such evidence would
present a multiplicity of issues that could not properly
be tried together; but the better rule, and the one sus-
tained by the weight of reason and authority, recog-
nizes the competency of such evidence.   [12 Am. and
Eng. Ency. of Law (2 Ed.), 1024; Railroad v. Brown,
65 Fed. 941; Baulec v. Railroad, 59 N. Y. 356; Davis
v. Railroad, 20 Mich. 124; O'Hare v. Railroad, 95 Mo.
662.]  A series of acts of a given character extending
over a period of time tend to exhibit and bring to light
the peculiar qualities and traits of the man and indicate
his adaptation or want of adaptation to the require-
ments of his position.   They have a pronounced eviden-
tiary value and should not be rejected out of any fanci-
ful fear of unduly multiplying the issues.   Again, in-
competency may be proved by evidence tending to show
that the fellow-servant labored under some physical
or mental infirmity that made him unfit for his position.
An armless man would not be thought competent to
serve as the engineer of a railroad engine, nor would
one afflicted by attacks of temporary insanity.   Cases
are plentiful where it has been held that a defect of
mind or character to support a cause of action based
on incompetency must be shown to have been the prox-
imate cause of the injury, but we know of no authority

which goes to the length of holding that where the defect is of such a nature that in all reason it should be said to have a continuous and lasting effect on the capacity of the fellow-servant to fill his position properly, its existence may not be proved.     If Tyner's capacity to conduct himself in the manner of a reasonably careful and prudent person was affected continuously and seriously by the dreadful disease which held him in its remorseless grip so that he became habitually careless or indifferent to the proper performance of his duties, he was incompetent, and there was a direct causal connection between the disease and the negligent act which resulted in the injury to plaintiff.

We concede defendant is right in saying that neither an insane person nor an epileptic suffering from an attack of his malady can be negligent, but a person belonging to the latter class of unfortunates may be so shattered in mind that even in periods of freedom from attack, he is incapable of being reasonably careful and prudent and, consequently, is habitually careless and negligent in the sense that he cannot bring his conduct to the standard expected of an ordinarily careful and prudent person in his situation.     But defendant argues further that a person may be subject to epileptic fits and still retain his full intellectual vigor.     Historical examples are cited, the most notable being that of Julius Caesar, who is said to have been seized by epileptic convulsions in Africa in his campaign against King Juba, in Spain just before he defeated the army of young Pompeius, and again, shortly before his death, when Antony offered him the crown.     On the other hand, the Spartans would not suffer epileptics to live, believing them unfitted for the duties of citizenship. Such historical incidents deserve but little consideration as we have no means of testing their accuracy.   We may assume that epilepsy does not impair the mental faculties in all cases, but it is a matter of common

knowledge that it is an intense nervous disorder and that one of its common results is the ultimate impairment of intellectual strength. Such knowledge, coupled with the specific facts adduced by plaintiff which go to show that Tyner, in truth, was partially demented from the ravages of the disease, was sufficient to make the evidence competent and to take to the jury the issue of whether he was an incompetent servant.

Our conclusion is that the petition sufficiently states a cause of action and that the facts relating to the existence of epilepsy and its effects had a direct evidentiary bearing on the issues tendered. And as it further appears from the evidence that defendant knew of the incompetency of Tyner and retained him in its employment with knowledge that he was habitually careless and that plaintiff, because of short acquaintance with his fellow-servant, did not know of his peculiarities, all of the constitutive facts of a good cause of action were supported by evidence as well as pleaded in the petition. It follows that no error was committed in overruling the demurrer to the evidence.

Other points are made by defendant, but what we have said disposes of the real controversy between the parties. A careful inspection of the record convinces us that the case was tried and submitted without substantial error. Claim of excessive verdict is advanced but in the amount awarded, we find no indication of passion or prejudice on the part of the jury, and, therefore, have no occasion to interfere with the judgment on that score.

The judgment is affirmed. All concur.