DAVID P. ALLEN, Respondent, v. QUERCUS LUMBER COMPANY, a Corporation, Appellant.

Springfield Court of Appeals, June 10, 1913.

1. **MASTER AND SERVANT: Fellow-servant's Negligence or Incompetency: Master Liable, When.** In an action by a servant against the master for personal injuries sustained by reason of the alleged incompetency or habitual negligence of a fellow-servant, to render the master liable it must be shown that the servant whose negligence caused the injury was habitually negligent or incompetent; that the injury complained of was caused by the servant's habitual negligence or incompetency; that the fact of the habitual negligence or incompetency of the servant was known, or by the exercise of reasonable care could have been known, to the master and that the master after such actual or constructive knowledge, negligently retained the servant.

2. ————: **Injury Sustained and Alleged Incompetency Must be Connected.** To render a master liable for the incompetency or habitual carelessness of a fellow-servant, it should be shown that the particular trait of character making such fellow-servant incompetent, contributed to the particular injury in question.

3. ————: **Fellow-Servant's Negligence or Incompetency: Evidence to Establish.** In an action against a master by a servant on account of personal injuries occasioned by the alleged incompetency and habitual negligence of a fellow-servant, it is necessary to prove both that the fellow-servant was "fractious" and high tempered and in such condition was liable to be reckless and rash, and that such fellow-servant was "fractious" and angry at the time the injury occurred.

4. **WITNESSES: Expert Witnesses: Qualifications.** A witness testifying as an expert as to whether or not the engineer who operated the defendant's engine and derrick to hoist and move logs had had sufficient experience should show that he is qualified to speak in relation thereto. But it is not necessary for the witness to have knowledge of that identical engine and appliance provided the engine and appliance, with the working of which he is acquainted, should be so similar that a person having knowledge of the one would necessarily have knowledge of the other.

Allen v. Lumber Co.

5. **EVIDENCE: Expert Witness: Scope of Testimony.** The evidence of expert witnesses concerning the competency or incompetency of the engineer engaged in running defendant's engine for hoisting and moving logs should be confined to what skill and experience is reasonably necessary in running an engine similar to the one in question and operating similar machinery and appliances.

6. **INSTRUCTIONS: Must be Based on Evidence.** An instruction which submits to the jury a question of negligence concerning which there is no evidence, is erroneous.

7. **———: Inconsistent Instructions: Error.** In an action by the servant against the master for injuries occasioned by the alleged negligence of a fellow-servant causing a log to strike and injure plaintiff, instructions *held* to be inconsistent and erroneous, which, on the one hand, told the jury that they might find defendant was guilty of certain acts of negligence and, on the other hand, directed them not to allow the plaintiff any damages resulting from such negligence.

8. **INSTRUCTIONS: Inconsistent Instructions: Error.** Other instructions on the issue of negligence examined and *held* to be so inconsistent and irreconcilable with the instruction on the measure of damages as to constitute reversible error.

9. **MASTER AND SERVANT: Negligence: Contributory Negligence.** In an action against the master by a servant for personal injuries occasioned by the alleged incompetency and habitual negligence of a fellow-servant, the evidence is examined and reviewed. *Held*, that the question of contributory negligence on the part of the plaintiff is not in the case.

10. **PLEADINGS: Negligence: Contributory Negligence.** It is the duty of both plaintiff and defendant in the first instance to plead the facts constituting negligence on the one hand or contributory negligence on the other.

11. **———: Waiving Insufficiency of: Appellate Court Will Not Review Error.** The appellate court will treat the pleadings as sufficient, where the parties to the case try same on the theory that the issue is raised by the pleadings, proceed to trial without filing motion to make more definite and specific and, without objection, allow evidence of negligence or contributory negligence to be admitted.

Appeal from Butler County Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED.

*Merritt U. Hayden* and *Ernest A. Green* for appellant.

(1)   The burden was upon the respondent to establish by a preponderance of all the evidence, three facts:  First.   That Foister was inexperienced, unskilful, habitually careless and incompetent to operate the derrick and engine with reasonable safety to respondent and others employed around same.  Second.  That appellant either knew of such incapacity, or by the exercise of ordinary care would have known of it.  Third.   That respondent's injury was the direct and proximate result of such incapacity of said Foister.  A failure to prove any one of these three facts deprives respondent of the right to recover herein.   Huffman v. Railroad, 78 Mo. 50; Kersey v. Railroad, 79 Mo. 362; Grube v. Railroad, 98 Mo. 330; Adams v. Machine Co., 95 Mo. App. 111; Roblin v. Railroad, 119 Mo. 476; Dysart v. Railroad, 145 Mo. 83; Zumwalt v. Railroad, 35 Mo. App. 661; Tucker v. Telephone Co., 132 Mo. App. 418, 112 S. W. 6; Snodgrass v. Steel Co., 173 Pa. St. 230; Kellogg v. Lumber Co., 125 Mich. 223; Gier v. Railroad, 108 Cal. 129; 1 Labatt on Master and Servant, secs. 181-188; Wharton on Negligence, secs. 238 and 240.   (2)   Incompetency of a servant on a given occasion may be proved by evidence of prior acts of unskilfulness, or carelessness, or of prior acts indicating incapacity, but the proof must be of such a character as to show habitual carelessness, habitual incapacity rather than occasional acts of negligence.   A single act of negligence, prior to an accident, neither proves or tends to prove either inexperience, unskilfulness, habitual carelessness or incompetency.   Dysart v. Railroad, 145 Mo. 83; Zumwalt v. Railroad, 35 Mo. App. 661; Tucker v. Telephone Co., 132 Mo. App. 418, 112 S. W. 6; Lee v. Bridge & Iron Works, 62 Mo. 568; Huffman v. Railroad, 78 Mo. 50; McKeever v. Mining Co., 10 S. D. 599, 74 N. W. 1053; Elevator

Co. v. Neal, 65 Md. 438; Coppins v. Railroad, 122 N. Y. 563-4; Coal Co. v. Seniger, 179 Ill. 373-4; Snodgrass v. Steel Co., 173 Pa. St. 230; Kellogg v. Lumber Co., 125 Mich. 223; Baulec v. Railroad, 59 N. Y. 356. (3) Evidence of many prior acts of negligence on the part of the engineer is not sufficient to sustain the allegation of negligence of appellant without proof of knowledge by apellant, either actual or constructive, of such acts of negligence of the engineer. Tucker v. Telephone Co., 132 Mo. App. 418, 112 S. W. 6; Roblin v. Railroad, 119 Mo. 476; Dysart v. Railroad, 145 Mo. 83; Baulec v. Railroad, 59 N. Y. 356; Huffman v. Railroad, 78 Mo. 50; Zumwalt v. Railroad, 35 Mo. App. 661; Railroad v. Hetzer, 135 Fed. 272. (4) A witness possessing no knowledge either of the method of construction of this engine and derrick or of its mode of operation, who never operated one similar to it in construction and mode of operation, who never saw one operated, who never saw this particular engine and derrick, is not competent to testify, as an expert, with respect to how much experience is required to qualify one as a reasonably careful engineer. McAnany v. Henrici, 238 Mo. 103, 141 S. W. 636. (5) It is error for the trial court to give to the jury instructions that are inconsistent with, and contradictory of, each other for the reason that it is not possible to tell which the jury followed. Smith v. Railroad, 126 Mo. App. 120; Wallack v. Railroad, 123 Mo. App. 160; Gessner v. Railroad, 132 Mo. App. 584

*David W. Hill* for respondent.

(1) Respondent was entitled to recover when he proved only facts stated in his main instruction. (2) Appellant cannot now be heard to say that respondent's instruction was not supported by the facts, because the instructions offered by the defendant and given to the jury assume the same facts. Peters v.

Gille Co., 133 Mo. App. 412; Reppetoe v. Railroad, 138 Mo. App. 402; Riggs v. Street Railway, 216 Mo. 304. (3) The respondent and apellant adopted the same theory and the appellant in the lower court certainly assumed the facts to exist upon which its instructions were based and it cannot now, in this court on appeal, try the case on any other theory than the one adopted by both parteis in the lower court. Drug Co. v. Bybee, 179 Mo. 369; Farrar v. Railroad, 162 Mo. 469. (4) The respondent had the right to presume that the engineer, Foister, would do his duty and not negligently let a heavy log fall upon him. Tetwiler v. Railroad, 242 Mo. 190; Weighman v. Railroad, 223 Mo. 699; Donohue v. Railroad, 91 Mo. 357. (5) In the trial court, the appellant voluntarily treated the issue of contributory negligence as one for the jury, and it is bound by the position assumed in the lower court. Dahmer v. Street Railway, 136 Mo. Ap. 449. (6) This court will disregard any errors not affecting the merits. Sec. 1850 and 2082, R. S. 1909; Honea v. Railroad, 151 S. W. 119. (7) Upon the hearing of the motion for a new trial, it was for the lower court to decide whether or not the verdict was against the weight of the evidence and the court's finding in favor of the plaintiff in that regard is conclusive in this court. Winfrey v. Lazarus, 148 Mo. App. 388; Lindsey v. Stephens, 229 Mo. 619.

STURGIS, J.—The personal injuries sued for by plaintiff are alleged to have been caused by the inexperience, unskilfulness, habitual carelessness and incompetency of an engineer employed by defendant in operating an engine and derrick used in lifting logs from one place to another in its log yards; and that by reason thereof a log, which was being so lifted in unloading a car of logs, was negligently caused or allowed to strike plaintiff, knocking him down and then let fall on him and dragged across his body perma-

nently injuring him. To avoid the effect of the engineer and plaintiff being fellow-servants the plaintiff also alleged that the inexperience, incompetency and habitual carelessness of the engineer were well known to the defendant or by the exercise of ordinary care could and would have been known to it.

The defendant answered with a general denial, a general allegation of contributory negligence and that when the plaintiff was employed by the defendant he represented and warranted that he possessed the requisite skill to perform the duties of his occupation and that he assumed whatever risks were incident to his employment.

The trial resulted in a judgment in favor of the plaintiff for the sum of $2000, and an appeal by the defendant.

The situation of the various appliances being used at the time the accident occurred and the surroundings and the cicumstances of the accident as disclosed by the testimony are fairly stated by the appellant substantially as follows:

On the west side of the sawmill there was a lumber yard in which the manufactured lumber was piled and on the east side of the mill was the log yard where the logs were gathered and piled preparatory to being hauled up into the mill and sawed. A railroad track extended along the south side of the log yard. This track ran practically east and west. It was laid on a slant, the south side of the roadbed being higher than the north side. The logs were brought to the log yard on flat cars which ran on this track. Usually these logs were fastened on the cars by means of what are called toggle chains, being large chains wrapped around the load and underneath the platform of the car. At a point in the log yard, about one hundred or one hundred and fifty feet north of this track, there was a derrick used for lifting and moving the logs

from place to place.   This derrick consisted of an upright piece of timber or mast and another piece of timber called the boom, the latter so placed as to form an angle of about forty-five degrees with the mast or upright timber.   An iron cable ran out along and over the upper end of this boom, which was thirty-five or forty feet above the ground, and then extended down from the boom to a block.   Below this block were two iron hooks or tongs which would be spread apart and each hooked into either end of a log.   The cable was five-eighths of an inch in diameter,   This derrick was operated by an engine which was in a little house about twenty-five feet north of the base of the derrick. The proper place for the engineer who operated this engine was in this engine house.   The derrick was used to lift logs off of the cars, and to pick them up and swing them around to any desired place in the log yard.

On the morning in question a carload of logs was hauled in on the track and stopped at a point just south of the southwest corner of the log yard, and southwest of the derrick.   Employees of the appellant were engaged in rolling the logs off this car.   Just a moment before the respondent was injured several logs had been rolled off the car and had dropped down on the bed of the track right beside the car and on the north side thereof; one of them nearly under the wheels, so that it became necessary to move this log before any more were rolled off the car.   It was the duty of respondent and another employee to move this log by means of the tongs and derrick.   At this time the boom of the derrick was standing about due south of the upright or mast. The upper end of the boom was north and east of where the log lay.   The tongs were carried over to the southwest and attached to the log. Respondent hooked the east tong to the east end of the log and another workman fastened the other hook to the west end.   At this time plaintiff was the one to

give the signals for Foister, the engineer, to start and operate the engine. It was customary for the one of the tong hookers doing this to give a slow signal to the engineer indicating a request for him to hoist slowly. The act of hoisting slowly caused the tongs to tighten their grip on the log. After that was done and it was seen that the hooks had firmly caught or gripped the log, another signal was given, known as the "high ball," the purpose of which was to inform the engineer that he should hoist rapidly, or, as some of the witnesses express it, 'take the log away" to wherever it was to be taken. On this occasion the plaintiff gave the slow signal and the engineer obeyed this signal. Seeing that the tongs were properly hooked into the ends of the log, plaintiff then gave the "high ball," or signal to "hoist fast," at the same time walking away towards the east in the general direction in which the log would travel as the derrick lifted it. The log was about sixteen feet long and one and a half feet in diameter.

The plaintiff in his testimony says that when he hooked the log he gave the engineer the signal for him to hoist slowly and tighten the hooks and after he saw that this was done he signaled the engineer to pull the log, and that then he walked out east along the car to get out of the way of the log and the loaded car, because he knew that when the log was pulled away from the edge of the rail that it would probably cause the logs to roll off the car.

Witnesses testified that the "high ball" signal does not necessarily mean that the log is to be hoisted rapidly but that the log is then ready to be raised and moved in the usual manner of such work to whatever point it is desired to be moved. The first signal is given the engineer to hoist for the purpose of determining whether or not the hooks have taken effect and securely fastened themselves in the log, and next signal would naturally result in a more rapid movement.

The plaintiff testified that prior to the accident complained of the foreman of the defendant was present when this same engineer was in charge and that they were unloading a car of logs and the engineer, after the hooks had been fastened to a log on the car, was given the signal to hoist and he continued to hoist until the entire car, on account of a chain being fastened around the logs and the car bed, was lifted off of the track and all of the men jumped off the car, and that the foreman then reprimanded him, stating that he would kill somebody directly. Another witness testified that the engineer would get "fractious" part of the time, and on cross-examination explained by saying that when the engineer got mad at somebody he was careless in handling the engine and that "lots of times a person would not hook to suit him or would not hook the right log sometimes, and he would jerk the log from you—something like that." Another witness testified that the foreman was around the place where the engineer was working every day, that the engineer was reckless and that he had seen "him jerk things around there rather recklessly."

The testimony tends to prove that the only experience which the engineer had with work of this character was as an extra man at the defendant's mill, taking the place of the regular engineer when he could not work, for a year or more and that the whole period of his work as regular engineer there would not exceed two or three months.

Plaintiff worked for the defendant some time before the injury, had quit and again began working for the company about six days before the accident, he testified that he told the foreman before he commenced work that he had never hooked before except skidding tongs. The foreman was not introduced as a witness at the trial, neither was the engineer, but two railroad engineers who testified as experts stated that they had not had experience in operating engines

of similar character to the one used in this instance, but thought that a man should have at least six months experience before undertaking to operate this engine.

The appellant assigns as error here the refusal of the trial court to instruct the jury, as requested by it at the close of the testimony offered in behalf of plaintiff and again at the close of all of the tesimony, to return a verdict for the defendant. Error is also assigned on the admission of the testimony of the two railroad engineers, introduced by the plaintiff as experts, for the purpose of showing that the defendant's engineer did not have the required amount of experience to qualify him for this work; also, error is assigned on certain instructions hereinafter discussed.

The essential facts in a cause of action of this character based on the alleged incompetency or habitual negligence of a fellow-servant are (a) that the servant whose negligence causes the injury was habitually negligent or incompetent; (b) that the injury was caused by the servant's habitual negligence or incompentency; (c) that the fact of the habitual negligence or incompetency of the servant was known or by the exercise of reasonable care should have been known by the defendant; (d) and that the master after actual or constructive acquisition of such knowledge negligently retained the servant. [Tucker v. Telephone Co., 132 Mo. App. 418, 112 S. W. 6.]

As a general rule a servant should not be condemned as incompetent by reason of a single act of negligence caused by imperfections that are general to humanity, for all men are more or less negligent; but a single act may under some circumstances characterize an individual as an improper and unfit person for a position of trust or for a particular service, as when such act is intentional and done wantonly, regardless of consequence, or maliciously. The manner in which a specific act is performed may at times

conclusively show the utter incompetency of the party and his inability to perform a particular service. [McDermott v. Hann. & St. Joseph Ry. Co., 87 Mo. 285, 295; Baulec v. New York & Harlem R. R. Co., 59 N. Y. 358, 363.]

But in order to render defendant liable for the incompetency or habitual carelessness of the engineer, it should be shown that the particular trait of character making him incompetent or negligent should be connected with the particular injury in question. [Tucker v. Telephone Co., 132 Mo. App. 418, 427, 112 S. W. 6; Kliefoth v. Iron Co., 74 N. W. (Wis.) 356; Texas Cent. Ry. Co. v. Rowland, 22 S. W. (Texas) 134.] Some of the witnesses stated that the engineer was "fractious," and explained this to mean that he was high tempered and would get mad at the men for not doing things right, and when in this condition he was inclined to be rash and reckless. The same witnesses said that when his temper was not aroused he was careful and did his work well. There is no evidence that he was "fractious" or angry at the time of this accident; consequently there is no evidence that this trait of character in any wise caused the injury. As this is the connecting link between the habitual carelessness or incompetency in this respect of the engineer and this injury, that question cannot be submitted to the jury without supplying this missing link.

In determining whether the defendant's engineer had had sufficient experience in running engines, the witness should be qualified to speak and the evidence of expert witnesses as to this matter should be confined to what skill and experience is reasonably necessary in running an engine similar to this one and operating similar machinery and appliances. We do not mean by this that it should be the same kind of an engine or the same kind of machinery and appliances, but that the engine and appliances should be

so similar and the work so similar that a person having knowledge of the one would necessarily have knowledge of the other. [Meily v. Railroad, 215 Mo. 567, 590, 114 S. W. 1013; Senn v. Railroad, 108 Mo. 142, 151, 18 S. W. 1007; Culbertson v. Railroad, 140 Mo. 35, 59, 36 S. W. 834.]

The evidence as it now appears in this case clearly fails to show that the defendant and its engineer were in anywise negligent in causing the log in question to strike the plaintiff in the first instance. It was the duty of the plaintiff to give the signals to the engineer in regard to starting the engine and to give the "high ball" signal that everything was all right. There is no evidence or claim that the engineer started the engine quicker or raised the log faster or did anything in that regard other than was usual in such cases. The fact that the log in question was behind some other logs, and that in raising the same it skidded on such logs and swung further to the east than was expected, which it seems was the real cause of plaintiff being struck in the first instance, was in no way due to the negligence of the defendant or its engineer. It results that there was no evidence to sustain a finding of negligence as to the log striking the plaintiff in the first instance and this question should not have been submitted to the jury; or what is better, the jury should have been plainly instructed that the defendant was not negligent in this respect.

It follows that the first instruction given on behalf of plaintiff, and which is the only instruction defining defendant's liability and directing a verdict for plaintiff on the conditions therein named, is wrong in that it submits to the jury the question of negligence in the log first striking the plaintiff and authorizes the jury to find that, "said log was then and there unskillfully and carelessly caused by said operator of said engine and derrick, Walker Foister, to suddenly and violently strike plaintiff."

The first instruction given for defendant is a proper one and in effect recognizes this error, but does not cure it. That is an instruction on the measure of damages and tells the jury that, "you cannot, in determining what injuries you will compensate him for, consider such as were inflicted by the log first striking the plaintiff, but only such as were sustained by him by reason of the log being permitted negligently to drop upon him after he had fallen, and then dragged across his body."

It is manifestly inconsistent for the court to allow the jury to find that defendant was negligent in allowing the log to strike plaintiff in the first instance, and then direct the jury not to allow him any damages resulting from such negligent striking. The instruction on the measure of damages, just mentioned as given for defendant, is also in conflict with the instruction given for plaintiff on the same question, in which the court told the jury to allow him damages for any injuries "which you may believe and find were directly caused by the log striking and falling on him." This instruction is erroneous in that it does not exclude injuries resulting from the log striking plaintiff in the first instance as does the instruction given for defendant, as above stated. The instructions upon this phase of the case are so inconsistent upon such a material issue in the case as to constitute reversible error. [Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. 587, 613, 45 S. W. 634; Smith v. Railway Co., 126 Mo. App. 120, 103 S. W. 593; Wallace v. Transit Co., 123 Mo. App. 160, 167, 100 S. W. 496.]

Several instructions given for defendant also relate to the question of defendant's negligence in regard to the log striking plaintiff in the first instance. We will presume that defendant would not have asked these instructions had not the court given the first instruction for the plaintiff submitting this issue to

the jury. On a retrial of the case, provided the evidence is substantially as it now is, all instructions submitting defendant's negligence in striking plaintiff with the log in the first instance should be omitted, and this phase of the case submitted to the jury solely on the ground of defendant's negligence in allowing the log to fall on plaintiff after he had fallen to the ground.

In view of a retrial of this case, it is also proper to say that it is almost impossible to tell whether or not the log was completely raised off the ground and was stationary or swinging directly under the end of the boom. The evidence shows that when the engineer first started to raise the log it was south and west of the end of the boom. If it was still in that position when it knocked plaintiff down and was not yet directly under the end of the boom, the log would of its own weigh fall to the ground and any attempt to raise the log would result in merely dragging it over the plaintiff. It cannot be determined with certainty whether an effort on the part of the engineer to raise the log higher would have resulted in raising it up so as to swing over the prostrate plaintiff or merely result in dragging it over him. If it was in the latter condition, then it could hardly be said that defendant's engineer was negligent in slacking or stopping the engine. Nor is it clear whether the boom was stationary or was being swung around to the east while the log was being raised and struck plaintiff.

Holding, as we do, that defendant's engineer is not shown to have been guilty of any negligence connected with the log first striking and knocking plaintiff down; and that his negligence, if any, is only connected with letting the log fall on plaintiff after he saw or should have seen him down and helpless, the question of contributory negligence is not in the case; for in that event defendant would owe plaintiff the same duty to avoid injuring him whether his being

knocked down was due partly or wholly to his own carelessness or a pure accident.

Should any question of contributory negligence arise on another trial the pleadings should be made to conform to what is said in Nephler v. Woodward, 200 Mo. 179, 187, 98 S. W. 488, that: "Strictly speaking there is no affirmative plea of contributory negligence in the answer in this case; there is a plea to the effect that whatever injuries the plaintiff may have suffered were the result of her own negligence, but there are no acts of negligence on her part specified in the plea."

It is the duty of both plaintiff and defendant in the first instance to plead the facts constituting negligence on the one hand and contributory negligence on the other. [Harrison v. Railroad, 74 Mo. 364.]

But if plaintiff or defendant is content to try the case on the theory that the general allegation of negligence in the petition or answer is sufficient to raise that issue and go to trial without filing a motion to make same more specific and definite, and allow evidence showing negligence or contributory negligence to go in without objection, then there is nothing for this court to do but to treat the pleadings in the same way. [Harmon v. Railroad, 163 Mo. App. 442, 143 S. W. 114; Schneider v. Railway, 75 Mo. 295; Conrad v. De Montcourt, 138 Mo. 311, 325, 39 S. W. 805.]

We have been asked to reverse this case without remanding the same but we are not certain that all the facts of the case were properly shown on the former trial or that we have correctly understood and interpreted such facts. Under these circumstances the case is reversed and remanded to be retried in accordance with this opinion. All concur.