CLAUDE F. BROWN, Respondent, v. QUERCUS LUMBER COMPANY, a Corporation, Appellant.

Springfield Court of Appeals, January 18, 1919.

1. **MASTER AND SERVANT: Injury to Employee: Operation of Derrick: Incompetent Operator.** In action for injuries to employee from unskillful operation of derrick by incompetent engineer, plaintiff must prove that engineer did not possess reasonable skill or competency, and also that employer knew, or by the exercise of ordinary care could have known, of such want of skill.

2. **EVIDENCE: Master and Servant: Unskillful Operation of Derrick Engine: Opinion Evidence.** In employee's action for injuries from employer's negligence in permitting unskilled engineer to operate derrick, incompetency of engineer can be shown by persons experienced in similar machinery, who knew engineer's experience either from having it imparted hypothetically, or from contact or observation, or by showing the extent of his experience and the manner in which the engine was operated at the time of the accident.

3. **MASTER AND SERVANT: Unskilled Operation of Derrick Engine: Jury Question.** In action to recover for injuries resulting from employer's negligence in employing unskilled and incompetent derrick engine operator, evidence *held* sufficient for submission to the jury of the question of whether the operator was incompetent.

4. ——: **Incompetent Fellow Servant: Jury Question.** Evidence, in such case, *held* sufficient for submission to jury of question of whether master exercised necessary care to ascertain operator's fitness before permitting him to operate engine.

5. ——: **Presumptions: Selection of Servants.** Master is presumed to exercise due care with reference to fitness in selecting servants.

6. ——: **Employment of Competent Help: Master's Duty.** Lumber company unloading logs from railroad cars by means of a derrick was required to exercise ordinary care to secure a reasonably competent and skillful derrick operator.

7. **TRIAL: Demurrer to Evidence: Admissions.** A requested instruction, in the nature of a demurrer, admits the truthfulness of every

material fact, which the evidence tended to prove, as well as every reasonable inference deducible therefrom.

8. ——: ——. Defendant's demurrer to the evidence should not be sustained when the evidence considered in its most favorable light for plaintiff is such that reasonable minds may differ, as to plaintiff's right to recover.

9. **MASTER AND SERVANT:** Assumption of Risk. Assumption of risk is founded upon contract, and presupposes that there are some dangers incident to the employment the servant is about to enter, and these dangers are what the servant assumes.

10. ——: ——: Incompetent Derrick Operator. An incompetent operator of derrick unloading logs from railroad car to lumber yard is not a danger incident to working in the yard as a tong hooker.

11. ——: ——: Negligence of Master. Where a lumber company created a dangerous condition by negligently permitting an incompetent operator to be in charge of the derrick unloading logs from train, the company is liable for an injury to employee engaged in unhooking logs from tongs, as a result of such incompetence; the employee not having assumed risk created by master's negligence.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard,* Judge.

AFFIRMED.

*Sheppard & Sheppard* for appellant.

*Almon Ing* and *V. V. Ing* for respondent.

BRADLEY, J.—Plaintiff sued to recover for personal injury and upon trial before the court and a jury plaintiff recovered, and defendant appealed.

Plaintiff when injured was working on the log yard of defendant helping to unload logs from railroad cars, and piling them on the ground. This unloading was done by means of a derrick. The derrick consisted of a large heavy perpendicular timber called the mast, at the lower end of which was fastened by a hinge joint the boom. Through the upper end of the boom ran a steel cable one end of which was attached to a drum in the

engine house, from the other end of the cable swinging free from the upper end of the boom were a block and large tongs. The log was raised or lowered by winding or unwinding the cable on the drum. The boom when the log was raised from the car was swung around by manipulating a throttle on the engine. There was a brake and ''dog'' on the drum which when in use would hold the drum stationary, and likewise the log at whatever height it might be when the dog was set. Two men were on the car to adjust the tongs, and two on the log pile to which the logs were moved to release the tongs. Plaintiff was on the log pile to which the logs were being moved when injured. After alleging the manner of the unloading, plaintiff alleges: ''Plaintiff further states at the time aforesaid, plaintiff and one of his co-employees was upon the said pile of logs in the performance of their duties as aforesaid; that defendant's regular employee in charge of and operating said engine and derrick was temporarily absent, and that defendant, its officers and agents, placed in charge as operator of said engine and derrick during the absence of said regular operator, an inexperienced, unskillful, habitually careless and incompetent employee to-wit, one Richard Benton; that the defendant, its officers and agents well knew, or by the exercise of ordinary care could have known, that said Richard Benton was inexperienced, habitually careless, unskillful and incompetent to operate said engine and derrick, but the said defendant, its officers and agents, carelessly and negligently, at and prior to the date last aforesaid, employed and retained in its employ the said Richard Benton to operate said engine and derick; that as a result of the carelessness and negligence of the defendant, its officers and agents, in employing and retaining in its employ said Richard Benton, for the purpose of operating said engine and derrick, after the defendant, its officers and agents knew, or by the exercise of ordinary care could have known, that said Richard Benton was inexperienced, unskillful, habitually careless and incompetent to operate said en-

gine and derrick with reasonable safety to plaintiff and other employees of defendant working near and around said derrick, and as a result of the inexperience, unskillfulness, habitual carelessness and incompetency of the said Richard Benton, on the date last aforesaid, while lifting a log to said log pile in defendant's lumber yard by means of said engine and derrick, then being operated by said Richard Benton, and without any signal from plaintiff as to the place or time for placing said log, said log was then and there unskillfully and carelessly caused and permitted by said operator of said engine and derrick, Richard Benton, to suddenly, unexpectedly and violently strike plaintiff and knock him down upon other logs and then to strike plaintiff upon his breast and shoulders and knock him from the top of said pile of logs to the ground, a distance of about ten feet, and thus and thereby'' injuring him.

The answer is a general denial, contributory negligence and assumption of risk. The facts constituting the alleged contributory negligence are not pleaded. The reply denied generally the new matter set up in the answer. When the engineer Benton swung this log around it was twisting and he let it down to steady it. He was a witness for plaintiff and gives his version as follows: ''Frizell and Sizemore put the tongs on this certain log—it was something like eight or ten feet out from the derrick—from the end of the derrick pole—and after they put the tongs into it they gave me the right signal and I pulled the log up and it was twisting in the middle and these two men that was on the pile of logs was supposed to take the tongs out of the log, was back on the back of the log pile. After the log began to swing around to where they could get hold of it, it got to twisting and they signaled to let it down so it could be untwisted in order to place it in the right place and when they done that—when I picked it up again—some way I failed to get the right lever open and it swung around and that caused the log to fall on Mr. Brown. It lowered and dropped before I aimed for it

to do so. I wasn't meaning for it to drop at that time. This Thomas Guill that I spoke to about this machine is supposed to be the general foreman of the mill and log yards. He hired me."

Defendant offered no evidence and asked no instructions except one in the nature of a demurrer, which was refused, and did not argue the case to the jury.

The negligence submitted is in failing to exercise ordinary care in having a reasonably competent person in charge of the engine by which the derrick was operated. On this point the evidence shows that at the time plaintiff was injured the regular engineer was engaged in making up a log report, one of his duties, and that he called Benton, whose regular job was that of tong hooker, to operate the engine while he, the regular engineer, was making up the log report. Of the operation of the engine Benton says: "In the month of August, 1917, I lived in Poplar Bluff, Missouri, and was employed by the defendant, as a tong hooker; but sometimes when the operator of the derrick was gone, I ran that machine. My main occupation there at the plant of defendant was hooking tongs on the log yard. I think I began work as a tong hooker there on the 2nd day of June, 1917. I was there on the log yards something like three or four weeks before I attempted operating the derrick and engine. I attempted it the first time along in July, 1917, something like that. I wanted to learn to operate it, you know, I wanted to have a higher position; I wanted to run the engine in the absence of the regular engineer so that if he ever quit I might be able to take his place and that would be a little bit more money for me, and in that way I would be able to better support my wife and children. That was my intention in operating the engine because I wanted to be more than ordinary tong hooker. I never operated a derrick before I commenced over there. I operated this derrick by the authority of Tom Guill. I wanted to handle the engine so I took it upon myself—there was no one at work that day and so I thought I would try and see how I would get

along with it, and I picked up a log and worked it. I done this seven or eight times before I said anything to the foreman and then I thought it would be best to see Guill about it then and I spoke to him about it one day at noon and he just says, 'That is all right; be careful and if he ever needs anybody to help him out you go ahead and handle the derrick when he says anything about it.' I did not attempt to put a log on the log pile. Guill had never taken me around there and showed me and found out if I knew. I never told Guill anything about whether I had had any experience with that kind of work. I just asked him if I could and he says yes. Q. Did anybody there attempt to show you how to operate that? Did Decker? A. Why, I had worked it a time or two while he was there. He showed me how the machinery worked—how it was handled—and the way I learned was by watching him and by handling it myself. I remember the day plaintiff was injured. I had been operating the derrick that day some ten or fifteen minutes to the best of my knowledge when Brown was hurt." Benton's experience in handling an engine was operating a hoisting engine at Flat River which he says was "nothing like the boom and derrick I had out there at Quercus," and this he operated for less than a year, and what experience he had had on the engine he was operating when plaintiff was injured, which was only a few minutes at a time over a period of from some time in July until August 31st, when plaintiff was injured.

Defendant makes three assignments of error based upon the refusal of a demurrer, the admission of evidence, and giving instructions. The demurrer is predicated upon the proposition that there is no evidence tending to show that defendant had been guilty of any breach of duty it owed plaintiff in failing to exercise ordinary care to obtain a reasonably competent engineer. Plaintiff's cause is bottomed upon this proposition. To support the allegations of negligence submitted it is necessary to establish that Benton did not possess

reasonable skill or competency with reference to operating the derrick engine, and that defendant knew or by the exercise of ordinary care could have known such fact. These two propositions we will consider separately. Defendant contends that there is no substantial evidence tending to prove that Benton was incompetent, and that therefore its demurrer should have been sustained. Incompetency on the part of Benton with reference to the operation of the derrick engine could be shown by persons experienced in like or similar machinery who knew Benton's experience either from having it imparted hypothetically or from contact and observation, or by showing the extent of Benton's experience, and the manner in which the engine was operated at the time in question. While there is nothing shown particularly intricate and complicated about the operation of the derrick engine, yet it does appear that there were the friction lever, the turn around throttle, and the "dog," each to be used as the necessity arose. The dog we might explain is the guard or safety in connection with the friction lever and drum so that the steel cable may be definitely held at any given notch in which the dog is set, without further holding the friction lever with the hand. Competency, skill or efficiency in manipulating these different devices could only be acquired by experience. It is not disputed but what Benton was a man of average intelligence and ability, and the only charge as to his competency is leveled at his experience. The record shows that the engineer of the derrick was in view of at least one of the men on the log pile all the time, and that he was supposed to stop, raise or lower on signal. He, therefore, had to be sufficiently experienced to do these things promptly and accurately or else injury might result.

Benton himself says as above quoted: "It got to twisting and they signaled to let it down so it could be untwisted in order to place it in the right place and when they done that—when I picked it up again—someway I failed to get the right friction lever open and it

swung around and that caused the log to fall on Mr. Brown. It lowered and dropped before I aimed for it to do so. I wasn't meaning for it to drop at that time.'' Evidently Benton became confused and failed to *dog* the friction when he raised the log after lowering it to stop twisting. He was holding the friction lever with his hand, instead of having it dogged, and when the log had reached a point on the swing around where the engineer would naturally expect a stop signal, he forgot *he* was holding the friction and released his hold, the log dropped and caught plaintiff's right leg between the log dropped and another in a kind of a trough. Benton says: ''when I dropped it the last time, and injured Brown's leg, I had closed the turn-around throttle. When I saw what had happened I opened it up to carry the log off and pull it around from him, caught him on the breast. You see, I pulled the turn-around throttle the wrong way when I started up the last time, and as soon as I could stop it, I did so.'' Plaintiff when caught by the fallen log ''hollered,'' and sat down on the log against which the fallen log had caught him. Benton saw the situation and quickly raised the log, but did not stop the boom on the turn-around, and the result was that plaintiff was dragged or knocked from the log pile some ten feet or more to the ground. Benton's confusion became complete it seems because the boom swung around until the suspended log struck the engine house some twelve feet from the log pile.

That the manner in which the derrick was operated when plaintiff was injured was unskillful is hardly questionable. This unskillful operation may have been due to lack of skill or competency or from negligence on the part of the engineer. The result would be the same whether due to lack of skill or from negligence. The most skillful derrick operator might on account of negligence do the same things Benton did. It is knowledge that most any average person can learn to drive an automobile, yet it is well known that until well settled from experience confusion is easy when

even the utmost attention is being given. The record shows that Benton had had no experience of consequence which could be said to make him a competent derrick operator, and the manner of his operation at the time of the injury is competent as tending to show his lack of competency and skill. In our opinion there was ample evidence and of a substantial nature tending to show lack of skill and incompetency on the part of Benton, and the demurrer should not have been sustained on the ground that there was no substantial evidence tending to prove that issue.

Also we hold that there was sufficient evidence to go to the jury on the question of whether defendant exercised the necessary care to ascertain Benton's fitness before permitting him to operate the engine. Defendant knew that Benton did not know how to operate the derrick, because Benton told the foreman he wanted *to learn how.* If Benton told the foreman of his experience in operating the hoister at Flat River this would not have wholly exculpated defendant, because Benton says that the hoister was nothing like the derrick. The presumption obtains that the master exercised due care with reference to fitness in selecting the servants (McDermott v. The Hannibal & St. Joseph R. Company, 87 Mo. 285), but when the facts appear out goes the presumption. Benton says that the foreman made no inquiry of his fitness. All the defendant knew about Benton so far as this record shows is that he was an ordinary tong hooker on the log yard, and was ambitious to learn how to operate the derrick; and with this information he was told by the foreman that he might operate the engine or derrick when the regular engineer called upon him. A disposition to encourge a worthy ambition while commendable cannot answer for dereliction in duty, when that dereliction concerns the safety of others. It was defendant's duty to exercise ordinary care to secure a reasonably competent and skillful derrick operator. [Williams v. Missouri Pac. Ry. Company, 109 Mo. 475, 19 S. W. 29; Smith v. St. Louis Street R. Company, 151

Mo. 391, 52 S. W. 378; Wabash R. Company v. Mc-Daniels, 107 U. S. 605.] Defendant's instruction in the nature of a demurrer admitted the truthfulness of every material fact which the evidence tended to prove as well as every reasonable inference deducible therefrom. [First National Bank v. Simpson, 152 Mo. 638, 54 S. W. 506; Independence Electric Company v. Farley Bros., 192 S. W. (Mo. App.) 129.] This being true, a demurrer to the evidence should not be given when the evidence considered in its most favorable light for plaintiff is such that reasonable minds may differ as to plaintiff's right to recover. [Beckermann v. Kortkamp Jewelry Company, 175 Mo. App. 279, 157 S. W. 855; Steffens v. Fisher, 161 Mo. App. 386, 143 S. W. 1101.]

Defendant complains that there was shown only one act of negligence on the part of Benton, and that one act of negligence is not sufficient to establish incompetency or to show a lack of skill, and cites as authority Allen v. Quercus Lumber Company, 171 Mo. App. 492, 157 S. W. 661. If the whole series of separate acts on the part of Benton resulting in plaintiff's injury be considered as one act then only one act was shown. But can it be said that it was an act of negligence? The question submitted was lack of skill not negligence, and that is what the jury found. But still defendant might say that a single result from a series of acts indicating a lack of skill is not sufficient to establish incompetency or lack of skill. It is not necessary to determine here as to a single act of negligence being sufficient or insufficient to establish anything, because plaintiff is not relying upon the *negligence* of Benton to establish lack of skill, but is relying upon proof of *lack of experience* as tending to establish lack of skill, and also relying upon the manner in which Benton operated the derrick as tending to establish the same fact. The Allen case, supra, was against this same defendant, and the injury there complained of was occasioned by a derrick as in the case at bar, and was due to the way and manner in which the derrick was operated; but that case was

bottomed primarily upon the charge of *habitual negligence* of a fellow servant, and there is nothing in the case tending to show lack of skill on the part of the engineer to operate the derrick except the manner in which it was operated at the time, and this was leveled at proving negligence and not lack of skill. It is stated in the Allen case, supra: ''The manner in which a specific act is performed may at times conclusively show the utter incompetency of the party and his inability to perform a particular service.'' citing McDermott v. Hannibal & St. Joseph Ry. Company, 87 Mo. 285; Baulec v. New York & Harlem R. R. Company, 59 N. Y. 358.

Error is predicated upon instruction No. 5, which is as follows: ''The court instructs the jury that although the jury should believe and find from the evidence that the work which the plaintiff was doing at the time he was struck by the log and injured, even if you believe and find that he was struck and injured, was unsafe and dangerous on account of the incompetency, inefficiency, and unskillfulness of the said Richard Benton, mentioned in the evidence, and the failure of the defendant and its foreman, Thomas Guill, to exercise ordinary care in employing and retaining the said Richard Benton in the operation of the engine and derrick, and that the plaintiff was aware of this fact, yet, if you shall further believe and find from the evidence in the case that the danger and hazard of the understanding was not of such an imminent and threatening character as to prevent a person of ordinary prudence from undertaking the same or continuing in the work, then the plaintff did not assume to do the said work at his own risk and peril, and was only required to exercise ordinary care and prudence incident to the situation and the character of the work, required.''

Under the facts of this case we think the instruction a proper one, if any instruction on assumption of risk should be given at all, and we do not deem it necessary to go into an extended discussion of this point. Assump-

tion of risk is found upon contract and presupposes that there are some dangers incident to the employment the servant is about to enter, and these dangers are what the servant assumes. An incompetent derrick operator could not be said to be a danger incident to working on the log yard as tong hooker. If the master created a dangerous condition by negligently permitting an incompetent operator to be in charge of the derrick, from which injury resulted to plaintiff, then the master is liable because the servant does not assume a risk created by his master's negligence.

We find no error. The judgment is therefore affirmed. *Sturgis, P. J.*, and *Farrington, J.*, concur.