GRUBE v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroads:** ORDINANCE REGULATING MOVEMENTS OF TRAINS IN CITY. City ordinances regulating the rate of speed of moving trains, locomotives, tenders or cars, within city limits, and requiring certain signals to be conspicuously placed upon them between sunset and sunrise, apply to the private switch yards of a railroad company situated within such limits.

2.  ——— : NEGLIGENCE : MASTER AND SERVANT : EVIDENCE. It is the duty of a railroad company to use reasonable care in selecting fit and competent persons to discharge the duties assigned to them. To show a want of such care, either in employing servants or in retaining them in its service, it is competent in actions for the wrongful death of employes resulting from the negligence of co-employes, to put in evidence the general reputation of the latter for unfitness for the duties assigned to them, and also specific acts of negligence or of incompetency, with evidence of knowledge thereof on the part of the master.

3.  ——— : ——— : ——— : PRACTICE. The objection, in an action against the master for the wrongful death of an employe resulting from the negligence of a co-employe, that an instruction ignores the question of the contributory negligence of the deceased and the latter's knowledge of the incompetency of his co-employe, cannot be sustained where such instruction requires the jury to find that deceased was injured "without negligence on his part directly contributing" to it, and other instructions declare that plaintiff cannot recover if deceased was guilty of negligence, or if he knew or, by the exercise of reasonable care, might have known that his co-employe was negligent or incompetent and that deceased thereafter remained in defendant's employ.

*Appeal from Cass Circuit Court.*—HON. NOAH M. GIVAN, Judge.

AFFIRMED.

*Thos. J. Portis* and *Adams & Bowles* for appellant.

(1) The court erred in admitting testimony of the witnesses for the plaintiff as to the general reputation of O'Neal as being an incompetent and unskilful servant. (2) The court erred in admitting isolated acts of negligence on the part of said O'Neal. *Railroad v. Gilbert*, 2 Am. & Eng. R. R. Cases, 233. (3) The court erred in admitting the ordinances of the City of Kansas in evidence. *Rafferty v. Railroad*, 91 Mo. 33 ; *Heeney v. Sprague*, 11 R. I. 456 ; *Gaines v. Buford*, 1 Dana (Ky.) 479–490 ; *Meyers v. Railroad*, 7 Am. & Eng. R. R. Cases, 406. (4) The court erred in giving the instructions asked by plaintiff. *Rafferty v. Railroad, supra ; Sullivan v. Railroad*, 88 Mo. 169 ; *Goetz v. Railroad*,

50 Mo. 474; *Fitzgerald v. Hayward*, 50 Mo. 523; *Frazier v. Railroad*, 38 Pa. St. 104; *Lannig v. Railroad*, 49 N. Y. 521; *Railroad v. Knittal*, 33 Ohio St. 468; *Ross v. Railroad*, 8 Fed. Rep. 544. (5) The court erred in refusing the instructions asked by defendant. *Carson v. Railroad*, 76 Me. 244; *Rafferty case, supra.*

*Prosser Ray* for respondent.

(1) Sections 5 and 10 of the "railroad" ordinance of the City of Kansas were properly pleaded, and the motion to strike out portions of the petition setting them up was properly overruled. The ordinance was admissible in evidence. *Crowley v. Railroad*, 65 Iowa, 658; *Merz v. Railroad*, 88 Mo. 672; *Dunkman v. Railroad*, 95 Mo. 232; *Rafferty v. Railroad*, 91 Mo. 33; *Bowman v. Railroad*, 85 Mo. 538. (2) The City of Kansas had power to make said ordinance and it was applicable within the city limits. Acts, 1875, pp. 204–7; *Whitson v. City*, 34 Ind. 396; *Neier v. Railroad*, 12 Mo. App. 25; *Railroad v. City*, 5 Hill, 209; 2 Dillon Mun. Corp., sec. 713; 2 Red. Ry. 577, 578. (3) The evidence as to O'Neal's general reputation for incompetency was admissible. Wood on M. & S., secs. 420, 421, p. 803; *Davis v. Railroad*, 20 Mich. 105; *Gilman v. Railroad*, 10 Allen, 233. (4) Previous acts of negligence of a similar class and character and in same employment were also admissible upon the questions of competency, and defendant's knowledge and negligence in retaining O'Neal. They were not offered or admitted as tending to prove the character of the act doing the injury. *Neilon v. Railroad*, 85 Mo. 590; Wood on M. &. S., p. 834; *Wright v. Railroad*, 25 N. Y. 562; *Railroad v. Gilbert*, 2 Am. and Eng. R. R. Cas. 233.

*L. E. Wyne*, also, for respondent.

(1) Defendant was guilty of negligence in employing and retaining in its employ O'Neal, knowing, or

when by the exercise of reasonable diligence, it could have known, that he was incompetent. *McDermott v. Railroad*, 87 Mo. 285 ; *Neilon v. Railroad*, 85 Mo. 599 ; *Maxwell v. Railroad*, 85 Mo. 95 ; *Lee v. Detroit Bridge Co.*, 62 Mo. 565 ; *Harper v. Railroad*, 47 Mo. 567. (2) And even though defendant did not know that O'Neal was incompetent, his negligence was the negligence of defendant, and it is liable. *McDermott v. Railroad*, *supra ; Moore v. Railroad*, 85 Mo. 588 ; *Dowling v. Allen*, 74 Mo. 14 ; *Hall v. Railroad*, 74 Mo. 298 ; *Brothers v. Carter*, 52 Mo. 372.

BLACK, J.—The plaintiff is the widow of Frank T. Grube. She brought this suit to recover damages for the death of her husband, who was injured in the defendant's switch yards at Kansas City on the twentieth of November, 1883, and from which injuries he died two or three days later. There was a verdict and judgment for plaintiff and the defendant appealed.

There are some facts set out in the petition, disclosed by the evidence on both sides, and about which there is no dispute, and they are in substance these : The accident occurred between half past six and seven o'clock in the afternoon on side track number 6. It was dark at that time. The switch tracks run in an east and west direction, and number 6 is a short track just to the north of a main switch track. The water plug and coal chutes are on the west end of number 6. It was the duty of the switch crews, to go on this track in the evening, take on coal and water, oil and prepare their engines for the night work. At the time in question there were three engines on the track preparing for the night work and waiting for orders from the yard master. These engines all fronted east; 806 stood furthest west, 804 stood six to twelve feet east, 801 stood three to six feet east of that, and a few feet further east there were three cars standing on the same track.

Grube, the deceased, belonged to what was called the west-end crew. He was sitting on the pilot beam of his engine, it being 804, which was the middle of the three engines as they stood on the track. At this time O'Neal, who was the foreman of another crew, known as the east-end crew, backed a train of from 18 to 35 cars in on the east end of track number 6. He ran the train against the three cars driving them on engine 801, which was forced against 804, and the whole in turn against 806, driving it backwards some distance. Grube was caught and injured in the collision, whilst sitting on the pilot beam of engine 804. It may be stated here that he was at his proper place.

The petition sets out two sections of an ordinance of the City of Kansas whereby it is enacted:

"Sec. 5. No conductor, engineer, fireman, brakeman or other person, shall move, or cause, or allow to be moved, any locomotive, tender or car within the city limits at a greater rate of speed than six miles per hour under a penalty of not less than twenty-five dollars nor more than five hundred dollars."

"Sec. 10. No conductor, engineer, fireman, brakeman or other person in charge of any locomotive, tender, car or train of cars, shall run, or move, or cause, or allow to be run or moved, for any purpose whatever, within this city, between sunset and sunrise, any such locomotive, tender, car or train of cars without having at least one lamp, headlight or lantern conspicuously placed in front of the same, facing the direction in which the same may be moving whether running forward or backward, under a penalty of not less than twenty-five dollars or more than five hundred dollars."

The petition then counts upon a violation of both sections of the ordinance by O'Neal, and alleges that he was an incompetent foreman and charges negligence on the part of the defendant in employing and retaining him in its service.

The further evidence for the plaintiff tends to show, that O'Neal ran his train in on the side track and against the three cars and the engines, at a rate of speed from nine to eleven miles per hour; that he had no one on the west end of the train, or near enough to it to receive danger signals from persons at or about the coal chutes. The proof is clear and undisputed that there was no light on that end of the train which came *in on the side track.

For the defendant, O'Neal testified that his train was moving at the rate of about three miles per hour; that he had a man with a lantern at the west end of it, who was on the ground, and a passing train on another of the tracks obstructed his view, so that he could not communicate with his engine; that this man failed to make the coupling as the cars came in contact and hence the collision. There is evidence tending to show that O'Neal was a reckless and careless foreman, and known to be such by his superior officers; and on the other hand, there is evidence to the effect that he was a careful and prudent man and so reputed to be.

The case was placed before the jury on the theory of the petition, namely, that a violation of the ordinance either in moving the train at a greater rate of speed than six miles per hour, or in failing to have a head-light, lamp or lantern placed in front of the same, facing the direction in which the train was moving, was negligence on the part of O'Neal, and that his negligence in either of these respects, coupled with the facts that O'Neal was an incompetent and careless foreman and that defendant was negligent in retaining him in its service, laid a foundation for recovery by the plaintiff. On all these points the instructions given on the one side and the other are full and fair and need not be set out in detail.

It was, however, admitted on the trial that these switch yards, where the accident occurred, had never

been laid off into streets or alleys; that they were not used by the public and were in the exclusive use of the defendant, but on three sides were not fenced. They are partly in Kansas. The accident happened at a point in this state. On these admissions, the court refused to instruct that the ordinance had no application to the defendant in the transaction of its business in the yards. Whilst there is abundant evidence upon which the case could go to the jury without reference to the ordinance, still the case is made to stand on the ground that a violation of the ordinance in either respect was negligence, and whether the ordinance applies to the defendant in the movement of its cars in its yards is a vital question as the case stands on this record.

1. There can be no doubt but the state has power to regulate the speed of trains and to make other reasonable regulations for the movement of locomotives and trains of cars in cities, towns, and other crowded places. Such regulations concern domestic government, and are but the exercise of the police powers of the state. *Railroad v. Deacon*, 63 Ill. 91; *Railroad v. State*, 51 Miss. 137; *Knobloch v. Railroad*, 14 Am. & Eng. R. R. Cas. 625; Tiedeman on Lim. of Police Powers, sec. 194. The power to enact such regulations may be delegated to cities and towns. *Merz v. Railroad*, 88 Mo. 672. In the case last cited, it was insisted that, as the place where the accident occurred was on private grounds of the defendant, to make the ordinance there in question apply to it would be to deprive defendant of the use of its property. This court then said, adopting the languauge of the court of appeals: " When a railroad company lays down its tracks in a populous city, not within any inclosure, but on ground open to the public, the mere fact that the rails are not laid over a public street or highway, but on private property of the company ought not to be held to relieve it of its obligation to observe all reasonable municipal regulations as to the movement of its trains within the

limits of the corporation." The power to regulate the speed and movement of trains in cities and towns, both on the streets and elsewhere, is recognized and reasserted in *Rafferty v. Railroad*, 91 Mo. 33.

The state and, through it, the City of Kansas, having the power to make reasonable regulations for the movement of trains within the corporate limits, there is no reason why a forced construction should be given to the ordinances in question with a view of exempting the defendant's yards from its operation. The fifth section of the ordinance, the one which regulates the rate of speed, contains no qualifications whatever. The tenth section prohibits the movements of cars, locomotives and trains between sunset and sunrise "for any purpose whatever," except there be displayed on the moving front a light. The ordinance makes no mention of streets, public or private grounds, but applies alike to all places in the city limits. There is nothing in the language used which will admit of the exemption of the defendant's yards. The ordinance is designed as well for the protection of those engaged in handling cars as for persons not thus engaged. In *Crowley v. Railroad*, 65 Iowa, 658, an ordinance prohibited the running of a car or engine in the city at a greater rate of speed than six miles per hour. The plaintiff was a laborer employed in the railroad yards in cleaning snow and ice from the track, and was injured by a car, which, it was claimed, was being moved at a greater rate of speed than six miles per hour. The contention made there was that the ordinance was applicable only to that part of the city used by the public, but the court held it could not be so limited in its operations.

The defendant places much reliance upon the *Rafferty case* before cited, where it was held a demurrer to the evidence should have been sustained. It is worthy of mention, though not made an element in the result there reached, that the boy who was injured in

that case had no right to be in the car yards or on the cars. His presence was unknown to the defendant's servants. Here the deceased was where his duties placed him, and the defendant owed him an active duty. Again the ordinance in that case is essentially different from the ordinance in this case. There two empty box cars were detached and allowed to go down an incline, accompanied by a brakeman. He got down and coupled them to some standing cars and they all moved on and struck a car on which the boy was standing. We were of the opinion that the box and other cars when thus attached for the purpose of storage on the side track, though moving, did not constitute a backing train, propelled by steam, within the meaning of the ordinance. The accident there happened in the yards, as in the present case, but in all other essential respects the cases are wholly unlike.

Our conclusion is that the ordinance does apply to the defendant in the movement of its trains in its car yards. That the ordinance is reasonable as to the rate of speed is clear; and we think it is reasonable in requiring a light to be placed at the moving front of such a train as the one of which O'Neal had charge. These propositions as to the reasonableness of the ordinance do not appear to be disputed by appellant, and in this respect we express no further opinion upon the ordinance than that just stated. Indeed the case was not tried by the defendant upon the theory that the ordinance is unreasonable, but upon the theory that it did not apply to the movement of cars and trains in the switch yards.

2. Plaintiff proved by several witnesses that at and prior to the date of the accident in question, O'Neal bore the reputation among the men with whom he worked of being a careless foreman. This was followed up by evidence of various specific acts of negligence on

his part in handling cars with his crew, and knowledge of them by the yard master. To all this evidence the defendant objected. It was certainly the duty of the defendant to use reasonable care in selecting fit and competent persons to discharge the duties assigned to them. To show a want of such care, either in employing the servant or in retaining him, it is competent to put in evidence his general reputation of unfitness for the duties assigned to him. Wood on M. & S., sec. 420. And for a like purpose, specific acts of negligence or of incompetency, with evidence of knowledge thereof on the part of the master, may be put in evidence. Wood on Mas. & Ser., sec. 432 ; *Mich. Cent. R. R. v. Gilbert*, 2 Am. & Eng. R. R. Cas. 233.

3. The further point made by appellant and not before noticed is that the plaintiff's second instruction ignores the question of negligence on the part of the deceased, and ignores his knowledge of O'Neal's incompetency. This instruction directs a verdict for plaintiff, should the facts therein stated be found to be true, and, among other things, the jury were required to find that deceased was injured "without negligence on his part directly contributing thereto." The jury were told by appropriate instructions given at the request of the defendant that the plaintiff could not recover, if deceased was guilty of negligence, or if he knew, or by the exercise of care might have known, that O'Neal was an incompetent and negligent foreman and that deceased thereafter continued in defendant's employ. It is plain to be seen that these questions were not ignored but were put forward in strong terms in a series of seven instructions given at the request of the defendant. There is little or no evidence of negligence on the part of the deceased, for it was his duty to place himself on the pilot beam to be taken to his work. He had been in the employ of defendant but a short

time and then not with O'Neal, but worked with a different crew and in a different part of the yards. But these questions of his negligence and knowledge of O'Neal's habits were all placed before the jury in a manner of which defendant cannot complain.

The judgment is affirmed. All concur; BARCLAY, J., in the result.