JESSE BURNS, Respondent, v. R. L. McDONALD MANUFACTURING COMPANY, Appellant.

In the Kansas City Court of Appeals, May 21, 1923.

1. **NEGLIGENCE: Master and Servant: In Order to Hold Master Liable for Negligence in Retaining a Servant in His Service, the Servant's Negligence Must be Habitual, Rather Than Occasional, and the Character of the Negligence Cannot be Proved by a Single Act of Negligence.** In order to render a master liable on the ground that he negligently retained in his employs a servant who was known by him to be habitually careless, the negligence of the servant must be habitual, rather than occasional, or of such a character as to render it imprudent to retain him in service.

2. ———: ———: **To Hold Master Liable for Retaining in His Employ a Habitually Careless Servant, Faulty Trait of Servant Must be Shown to be Cause of Injury.** The master cannot be held liable for retaining in his service, a habitually careless servant, unless the injury is shown to be connected with or caused by the faulty trait in the servant.

3. ———: ———: **Incompetent Servant: To Hold Master Liable for Negligence in Retaining Incompetent Servant, it Must be Shown That Master Had Knowledge of Servants Incompetency.** To hold master liable for negligence in retaining in his service habitually careless servant, knowledge, either actual or constructive, of such faulty trait or habit must be shown against master, and mere proof that the servant was incompetent and that plaintiff was injured does not raise an inference of negligence against the master.

Burns v. McDonald Mfg. Co.

4. ————: ————: ————: Habitual Carelessness of Servant May be Shown by the Way He Performs Various Duties Involving Similar Acts. Habitual carelessness of a servant may be shown by the way he performs various duties involving a series of acts of similar character covering a period of time which reveal the particular trait of the servant in question.

5. ————: ————: Demurrer: Negligence of 'Master in Retaining Habitually Careless Fellow-Servant Held for Jury. In an action by employee for damages for injuries caused by negligence of fellow servant, evidence *held* sufficient to warrant jury to find that such fellow-servant was habitually careless, that defendant had notice of such characteristics, and was thereby negligent in retaining him as a servant, and therefore court did not err in overruling defendant's demurrer thereto.

6. ————: ————: ————: Whether Characteristic Negligence of Fellow Servant Was Cause of Injury, Held for Jury. Where plaintiff's injury was caused by habitual careless characteristic of fellow-servant, the master is liable, and it is *held* that the evidence is such that the jury could find that plaintiff was injured as a result thereof, and court was justified in overruling defendant's demurrer.

7. ————: ————: Contributory Negligence: Contributory Negligence of Servant in Continuing to Work With Habitually Negligent Fellow-Servant Held for Jury. Contributory negligence of plaintiff in continuing to work with habitually negligent fellow servant, or in what plaintiff did or failed to do at time board fell injuring him, *held* to be a question for the jury.

8. EVIDENCE: Conclusions: Evidence as to Specific Acts of Negligence Tending to Show Habitual Carelessness of Servant, Held Admissible as Against Objection That Such Testimony Was a Conclusion of the Witness. Evidence of specific acts of negligence on part of servant, such as habit of throwing or dropping things without looking where he was putting them, tending to show habitual carelessness, *held* admissible as against objections that such evidence was a conclusion of witness.

9. ————: Specific Acts of Negligence Tending to Show Incompetency of Servant Held Properly Admissible. Evidence of specific acts of negligence tending to show habitual carelessness or incompetency of servant, *held* properly admissible.

10. APPEAL AND ERROR: Improper Argument: Where Mention of Improper Argument Was Not Made in Motion for New Trial, the Matter Cannot be Reviewed on Appeal. Where mention of im-

213 M. A.—41

proper argument was not made in motion for new trial, the matter cannot be complained of or reviewed on appeal.

11. TRIAL PRACTICE: Improper Argument: Argument as to What Jury Would Ask for Same Injury to Themselves Held Not Reversible Error. Argument of counsel for plaintiff as to what jury would ask for the same injury to themselves, *held* not error where court was not asked to reprimand counsel, but only to discharge the jury, and impliedly sustained the objection by telling the jury to pay no attention to such remarks, whereupon plaintiff's counsel told jury he intended to ask them to use their common experience in the every day affairs of life.

12. ———: ———: Argument as to Why a Certain Witness Was Not Put upon Stand by Defendant Held Not Erroneous. Argument of counsel for plaintiff asking why defendant did not put a servant, who was present at the trial, on the stand, whose negligence it was charged caused plaintiff's injury, *held* not error; his interests being opposed to plaintiff, and in favor of defendant, his evidence was not equally available to plaintiff as it was to defendant.

13. APPEAL AND ERROR: Matters Addressed to Jury Not Reviewable on Appeal Where There is Ample Evidence to Support the Verdict. Matters addressed only to the jury are not open to review on appeal where there is ample evidence to support verdict of jury.

ON MOTION FOR REHEARING.

14. TRIAL PRACTICE: Witnesses: Argument of Plaintiff's Counsel as to Why Defendant Did Not Put a Witness, Who Was Formerly in Its Employ, Upon Witness Stand, Held Not Error. In an action by an employee injured through the negligence of a fellow-servant, who was not in the employ of the master when the plaintiff's suit was tried, did not make him a witness whose testimony was equally available to plaintiff as to defendant, so as to render argument of plaintiff's counsel as to why defendant did not put him upon the stand improper; his interests being still with the defendant, and if he was present in the courtroom at anybody's instance other than his own, it was that of defendants.

Appeal from the Circuit Court of Buchanan County.— *Hon. L. A. Vories, Judge.*

AFFIRMED.

*Mytton & Parkinson* for respondent.

*Mosman, Rogers & Buzard* for appellant.

TRIMBLE, P. J.—While engaged in helping to erect a building for defendant, a heavy plank or joinst fell upon and injured plaintiff's arm. This action for damages was accordingly brought resulting in a judgment of $4000 in plaintiff's favor, from which defendant has appealed.

The case was submitted to the jury upon the ground that the defendant retained in its employ one Zeigler who was habitually careless, negligent and reckless in performing the work he was called upon to do, after the defendant knew, or in the exercise of ordinary care should have known, of such incompetency, habitual carelessness and recklessness, whereby and on account of which plaintiff was injured.

The defense was a general denial, assumption of risk, and contributory negligence.

The building in process of being erected was 120 feet or more in length north and south and thirty or more feet in width. A row of posts, at regular intervals, went along the middle of the building the entire length thereof, on which steel I-beams were fastened so as to form a continuous line of support throughout the length and in the middle of the building. It was to be a building one story in height; and extending from either side-wall to the central I-beam, joists were to be placed running east and west and about twelve inches apart. These joists were each eighteen feet long, fourteen inches wide and three inches thick and weighed in the neighborhood of 180 or 200 pounds.

The joists on the east side of the median I-beam line had been set in place along 'the entire length of the building. This, however, had been done by a method different from that by which the joists on the west side of the building were, by direction of the foreman, attempted to be put in place. The new or different method adopted for placing the joist on the west side, consisted

in having two men (one at each end) carry a joist into the building, one end of which would be handed to plaintiff, standing on a platform or scaffold about four feet high extending alongside the median I-beam line, and the other end to another employee standing on a similar platform running alongside of the side-wall. These two employees would then in unison lift the joist above their heads, the employee next to the wall placing his end of the joist edgewise on the wall at its proper place and plaintiff delivering his end into the hands of Zeigler who sat astraddle of the median I-beam and reached down and took it from plaintiff's hands and set it edgewise in its proper place on the I-beam. As plaintiff had to lift the joist high above his head he could not look up to see when Zeigler had obtained a secure hold thereon, so it was agreed that when Zeigler had obtained such hold he would notify plaintiff when the latter should let go of the joist by saying, "All right" or "I got it," and; thereupon, plaintiff would immediately let go, so that Zeigler could at once elevate the joist into its proper place. They had begun at the south end on the west side putting the joists in place in this manner and had put up about six or eight and were out from the south end-wall about eight or ten feet, when a joist was being handed up by plaintiff to Zeigler in the manner aforesaid. Plaintiff had raised the joist high above his head. Zeigler stooped over or leaned down as though to take the joist and may have had his hand or hands upon it. But whether he did or not he gave the required signal by saying, "All right" or "I have got it," whereupon plaintiff relaxed his hold and immediately the heavy joist fell edgewise upon and across his arm, severely injuring it. Plaintiff, losing his equilibrium through the force of the blow, staggered and then, to avoid falling, sprang out the open window space in the wall to the ground below, alighting upon his feet or perhaps his feet and hands. Plaintiff offered evidence tending to show that a lump came upon his arm where the edge of the board struck it which refused to heal, which finally developed pus in it and which had to be lanced several times; and that as a

final result thereof the bone became affected, the arm has become stiff and he cannot raise it beyond a certain point, whereby he is greatly hampered in his work.

Defendant very strenuously urges that its demurrer, offered at the close of the entire case, should have been sustained. The basis of this contention appears to be that there is no evidence even tending to show: (1) That Zeigler was habitually negligent or incompetent; nor (2) that the injury to plaintiff was caused by, or the result of Zeigler's habitual negligence or incompetence; nor (3) that such alleged incompetence or habitual negligence was known to defendant; nor (4) that Zeigler was retained in defendant's employ after actual or constructive knowledge of such alleged habitual negligence and incompetence; and (5) that the evidence shows plaintiff was guilty of contributory negligence as a matter of law.

In contending that there was no evidence to show Zeigler's habitual negligence, defendant manifestly limits the scope of the inquiry to Zeigler's conduct in lifting and placing the other joists prior to this, and does not allow it to extend to any other work done by him about the premises. The argument apparently is that as the joists on the east side and the preceding joists on the west side were put into place without any untoward happening or careless conduct in that regard on the part of Zeigler, and as there was nothing to show he was physically unfit to do that work, therefore there is nothing to show that he was habitually negligent or unfit, and even if he did carelessly allow this particular joist to fall, it was merely one instance thereof which is insufficient to show habitual unfitness, but only negligence on this occasion for which defendant is not liable, Zeigler being plaintiff's fellow-servant.

We have no fault to find with the general legal principles involved in the above-stated position, but the trouble is with their application to the facts of this case. It is no doubt true, that in order to render a master liable on the ground defendant is herein sought to be held, the negligence of the servant "must be habitual, rather than

occasional, or of such a character as to render it imprudent to retain him in service." [First National Bank v. Chandler, 144 Ala. 286, 308.] The character of carelessness cannot be proved by a single act of negligence. [Galveston, etc., R. Co. v. Davis, 48 S. W. 570, 571; Allen v. Quercus Lumber Co., 171 Mo. App. 492, 501.] Of course, we are not speaking now of a case where an act may be of such a character as to, *per se,* show *incompetency.* [McDermott v. Hannibal, etc., R. Co., 87 Mo. 285, 295.] Furthermore, the master cannot be held liable for retaining an habitually careless servant, unless the injury is shown to be connected with or caused by the faulty trait in the servant. [Tucker v. Missouri, etc., Telephone Co., 132 Mo. App. 418, 427; Allen v. Quercus Lumber Co., 171 Mo. App. 492, 502.] And knowledge, either actual or constructive, of such faulty trait or habit must be shown against the master; mere proof that the servant was incompetent and that the plaintiff was injured does not raise an inference of negligence against the master in that regard. [Huffman v. Chicago, etc., R. Co., 78 Mo. 50, 54.]

With reference to confining the inquiry as to Zeigler's habitual carelessness to his conduct in lifting the joists prior to the injury, it will be observed that, as hereinbefore stated, the joists on the east side had been placed in position by a different method and only six or eight had been set up in the manner in use when plaintiff was hurt. In other words, the injury occurred very shortly after Zeigler, by reason of the method adopted pursuant to the foreman's order, began working in a place where carelessness on his part would be fraught with danger to plaintiff. Consequently, if plaintiff is to be limited to the way in which Zeigler received and lifted the joists prior to the injury, the opportunity of showing habitual negligence would be reduced to an exceedingly narrow compass indeed, if not to absolute zero. Manifestly, however, plaintiff cannot be so limited, for the characteristic of habitual carelessness is disclosed by the way a servant performs various duties involving

a series of acts of similar character covering a period of time which reveal the particular trait of the man in question. [Tucker v. Missouri, etc., Telephone Co., 132 Mo. App. 418, 427.]

In this regard plaintiff introduced the evidence of himself and other fellow workmen of Zeigler which tended to show the following facts: That they noticed a peculiarity in his actions, and a difference in the way he did his work from the way other men did theirs; that he did his work in a reckless manner, indicated by the way he did things. For instance, when digging for the foundation, he would, at the close of work and when the whistle blew, throw his shovel aside or down without looking where he was throwing it. Upon entering a ditch to commence his work he would first throw his shovel in without looking to see whether anyone was in the ditch who might be injured thereby, and upon getting ready to emerge from the ditch he would throw his shovel out with the same disregard for the safety of his fellow-servants. Again, when engaged with others in carrying lumber and piling it up, he, holding and carrying one end of the timber and a fellow-servant the other end, would drop his end without regard to whether it was ready to be dropped and without attention to where or when he was dropping it. In the course of the work it became necessary to break up an old concrete dock that was on the premises and in the way, and to haul the pieces of concrete away by means of wagons. The evidence is that the workmen assisting Zeigler in lifting the heavier pieces of concrete upon the wagon had to be on the watchout else the latter in doing his part of the work would cause his associates' hands to be mashed; and in loading the smaller pieces of concrete which could be handled by one man alone, Zeigler would throw the pieces at the wagon without looking to see where he was throwing them, with the result that the pieces missed their mark. It is true, there is evidence that other men in tossing pieces of concrete in the wagon sometimes failed to toss them accurately so that they would strike the wagon and fall back, but there is no evidence that the

other men would toss their pieces carelessly or without looking to see where they were throwing them.

The evidence in plaintiff's behalf is furthermore to the effect that this occurred before the plaintiff's injury; that Zeigler's careless habits were so clearly manifested that they attracted the notice of his fellow workmen and caused comment thereon among them; that these careless and reckless actions took place in the presence of the foreman and where he could not fail to observe them, and that some of the workmen, including plaintiff himself, spoke to the foreman about it.

In view of what the record discloses, it is clear that there was ample evidence from which the jury could find that Zeigler was habitually careless and that defendant had notice of his characteristics in this regard; and that defendant was negligent in retaining him as a servant in work where his negligent habits were likely to cause injury to his fellow workmen.

But, of course, although Zeigler was habitually negligent, still, unless plaintiff's injury was caused by the former's characteristic in that regard, defendant is not liable, for in such case, defendant's negligence in retaining Zeigler in its service would not be the proximate cause of the injury. 'We think, however, that the evidence is such that the jury could well say the injury arose through Zeigler's characteristic lack of care. It is true, plaintiff did not see Zeigler's actions at the time the board fell, but the latter gave plaintiff the signal indicating that a secure hold on the board had been obtained, whereupon plaintiff released his hold and immediately the board fell. The inference is almost irresistible that Zeigler carelessly gave the signal before he had secured a hold on the board; but the result would be the same if he carelessly took hold of it and then gave the signal. Moreover, there is no evidence that the fall of the board was caused by anything other than the failure of Zeigler to have hold of it at the time he gave plaintiff the signal to let loose. If anything other than Zeigler's carelessness caused the board to fall, Zeigler was the only man

who knew it. He was present in the court room at the trial; he was the man who was charged with being personally blameworthy; and it would have been an easy matter for defendant to have put him on the stand and shown what caused the board to fall, if his carelessness did not cause it. The evidence was sufficient to justify the jury in finding that the board fell because of Zeigler's characteristic negligence, and to require the trial court to overrule the demurrer. [Sustar v. Bambrick, etc., Co., 179 Mo. App. 495; Grube v. Missouri Pacific R. Co., 98 Mo. 330; Griffin v. Boston, etc., R. Co., 87 Vt. 278; Allen v. Quercus Lumber Co., 171 Mo. App. 492; 26 Cyc. 1300; Louisville, etc., R. Co., v. Moore, 156 Ky. 708.]

It is difficult to see how it can be contended in one breath that there was no evidence tending to show Zeigler was habitually negligent, and in the next breath that plaintiff was conclusively guilty of contributory negligence in working with him. However, there is nothing in plaintiff's evidence to disclose negligence on his part, as a matter of *law*, either in continuing to work with Zeigler, or in what plaintiff did or failed to do at the time the joist fell. If there were any evidence from which the jury could find negligence on plaintiff's part, that was for the jury to settle, though, as to this, defendant did not deem it of sufficient importance to ask an instruction upon it, but did submit to the jury an instruction that if the jury believed plaintiff had as good or better opportunity than the defendant to know the manner in which Zeigler did his work, and *made no complaint* to defendant, then plaintiff assumed the risk. It may be observed also that plaintiff in his instruction submitted to the jury the question of whether he was at the time of the injury in the exercise of ordinary care, and whether he was in the exercise of ordinary care in continuing to work with Zeigler.

Complaint is made that the court erred in overruling defendant's objections to testimony and allowing plaintiff's witnesses to testify to conclusions regarding Zeig-

ler's recklessness and negligence. We have carefully read the record and find that wherever the answer was a conclusion, or invaded the province of the jury, the objection was sustained; and that where the objections were overruled the answers were not conclusions but were the statements of what the witness observed, as, for instance, that Zeigler would throw or drop things without looking where he was putting them. The specific acts of negligence were given, and this was proper. [Grube v. Missouri Pacific R. Co., 98 Mo. 330, 339.]

We have answered the objection to plaintiff's instruction No. 2 by what has been said about the right of plaintiff to show habitual negligence on Zeigler's part by evidence of the negligent way in which he performed his other duties.

It is urged that reversible error was committed by plaintiff's counsel in the closing argument. As to one statement now complained of, no mention of it was made in the motion for new trial, hence it is not open for review now. However, it may be stated that the trial court was not asked to reprimand counsel, but only to discharge the jury, and the court impliedly sustained the objection by telling the jury to pay no attention to such remarks but to be governed solely by the instructions of the court in that regard. Whereupon plaintiff's counsel said to the jury he had no right to ask them to say what they would do or would ask for the same injury to themselves but that what he intended to say was to ask them to use their common experience in the every day affairs of life.

The other argument complained of, which was in the motion for new trial, is the statement, in argument, of another of plaintiff's counsel, asking why defendant did not put Zeigler on the stand, since if there was anybody on earth who could deny the situation it was the man Zeigler who was accused of being a careless fellow. In support of this contention, defendant cites cases where the person referred to as not having been put upon the stand by the opposite party was equally accessible and his evidence equally obtainable by and available to both

parties, so that no unfavorable inference should be drawn against one more than the other. But that is not the situation here. Zeigler was present in the court room at the time of the trial. His interests were all opposed to plaintiff and in favor of defendant. He was the servant charged with being blameworthy and negligent. He could have been sued and held liable for the injury. His evidence was not equally available to plaintiff as it was to defendant. There was no error in the argument. [McClanahan v. St. Louis, etc., R. Co., 147 Mo. App. 386; Reyburn v. Missouri Pacific R. Co., 187 Mo. 565; McCord v. Schaff, 216 S. W. 320.]

Other matters are commented upon in appellant's brief, but it is manifest they are such as could with propriety be addressed only to the jury, but by the latter's verdict they have been passed upon, and there being ample evidence to support the verdict, they are not open for review here.

The judgment is without reversible error and we, therefore, cannot disturb it. Wherefore it is affirmed. All concur.

ON MOTION FOR REHEARING.

TRIMBLE, P. J.—Defendant insists, apparently with much earnestness, that the opinion is based upon a misconception of the evidence because the opinion states the joist that fell and injured plaintiff was being raised and put into place by a method different from that in which the joists on the east side were raised, whereas, so appellant claims, there is nothing in the record to support such a statement.

Plaintiff, throughout the trial, repeatedly endeavored to show that the joints on the east side had been put up by a different method from that used in putting up the few placed in position on the west side and the joist that fell and caused the injury. Every time, however, that plaintiff attempted to do this, defendant objected and succeeded in getting the court to sustain the objection. Nevertheless, in spite of defendant's efforts

to keep such fact from appearing, the record does disclose that there was a different method used. The evidence shows that in placing the joists on the east side they had commenced at the north end and worked to the south end of the building; and when they began putting the joists on the west side they commenced at the south end and had put up only six or eight when the injury occurred. The record discloses that when asked as to the method adopted in putting up the joists, the witnesses, and especially plaintiff, made a distinction by asking which side was meant. But when told that counsel was not inquiring as to the east side but as to *the time he was hurt* and as to whether he was then putting them up in the way he was instructed, witness replied that he was "putting them up there that way," the way he had been told to do it, which he had theretofore described. Later on, the court ruled, that, in view of defendant's cross-examination, plaintiff could show "how *many* (joists) were put up *that way,* but not as to how others were put up." Thereupon it was elicited from plaintiff that, at the time he was hurt, only about eight or ten joists "had been put up by the method of your lifting them up over your head that way."

Even if defendant is in a position to complain of the lack of any evidence upon the matter herein considered, we think there is in the record ample justification for the statement in the original opinion of which complaint is made.

It is true, Zeigler, at the time of the trial, may not have been in the employ of defendant, but we do not think that fact changed the situation and made him a witness whose testimony was equally available to plaintiff as to defendant. His interests were still with defendant and if he was present in the court room at anybody's instance other than his own, it was that of defendant's.