ALICE BORRSON, Administratrix of the Estate of RAYMOND ARTHUR WHITE, deceased, v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—No. 37798.—172 S. W. (2d) 826.

Division Two, June 7, 1943.

Rehearing Denied, July 6, 1943.

*Everett Paul Griffin* and *Carl S. Hoffman* for appellant.

216

*B. Sherman Landau* for respondent.

218

[828] ELLISON, J.—This is the third of three actions under the wrongful death statute, Sec. 3652, R. S. 1939, Mo. R. S. A., sec. 3652, growing out of a collision on December 20, 1939, between appellant's eastbound freight train and a truck driven by Robert Jean White, with whom his wife, Myrtle Ann White and their two-year-old son Raymond Arthur White were riding. The collision occurred on Caulk's Hill road in a rural part of St. Charles county at a grade crossing where a high bluff hid the train until it was close to the highway. The plaintiff recovered judgment in each case for $10,000. The instant action (No. 37,798) is for the death of the infant and is prosecuted by the respondent as his administratrix. The judgment in the action for the mother's death (No. 37,611) was affirmed by this Division in 161 S. W. (2d) 227. The judgment in the action for the death of the father (No. 37,799) is reversed in an opinion delivered contemporaneously herewith. The facts are fully stated in those cases. We shall set out here only such evidence as is necessary to a discussion of the assignment of error.

The respondent's petition was in two counts. The first was based on the wrongful death penal statute, Sec. 3652, R. S. 1939, Mo. R. S. A., sec. 3652, and alleged, among other things, failure to sound the locomotive whistle or bell at the crossing. The second count was based on the wrongful death compensatory statutes, Secs. 3653-3654, R. S.

1939, Mo. R. S. A., secs. 3653-3654, and charged failure to maintain watchmen, crossing gates, etc. Evidence was introduced by respondent on both counts. At the close of the respondent's case in chief and of the whole case, appellant moved the court to require respondent to elect on which count she would proceed. Both motions were overruled; but respondent nevertheless submitted her case only on the first count, for failure to sound the whistle or ring the bell. Error is assigned here in the overruling of these motions, on the theory that the two causes of action were "utterly inconsistent and the proof of one disproves the other," citing Drolshagen v. Union Depot Co., 186 Mo. 258, 262 (i), 85 S. W. 344(1), and two other cases less in point.

■ This same contention was overruled in the mother's case, supra, 161 S. W. (2d) l. c. 229(1). We adhere to that ruling, and are unable to see inconsistency in the *facts*—which is the ground assigned. A defendant carrier undoubtedly could be guilty at the same time both of a failure to sound the engine bell or whistle and of failure to maintain a proper crossing or crossing gates. · Gann v. C., R. I. & P. Ry. Co., 319 Mo. 214, 219, 6 S. W. (2d) 39. In the Drolshagen case cited by appellant it was the inconsistency in the *facts* that the opinion denounced. The plaintiff in the first two counts of his petition had alleged [829] his son was *on a street car* and was forcibly ejected; whereas the third and fourth counts alleged the boy was *on the street* and that the street car ran over him. Conceding the respondent here finally would have had to elect whether she would seek her *recovery* under the penalty statute or the compensatory statute, she did do that in effect by submitting her case to the jury solely on the first count for failure to sound the bell or whistle. She had the right to state and prove (in good faith) causes of action under both the penal and compensatory sections of the death statutes, in separate counts. There is no merit in the assignment.

■ The next assignment of error is that the trial court erred in refusing to sustain appellant's demurrers to the evidence because: (1) the *sole* proximate cause of the infant's death was the negligence of his parents (both the father and mother); (2) there was no substantial evidence of failure to sound the statutory warning signals. On the first contention, it was held as to the mother in the first Borrson case, supra, 161 S. W. (2d) l. c. 230(2-8), that there was no substantial evidence convicting her even of contributory negligence. In the second Borrson case (No. 37,799) handed down contemporaneously herewith, appellant contended the father was guilty of *contributory* negligence as a matter of law, and we sustained that contention. But if his negligence was merely contributory, it could not have been the sole cause of the infant's death. Appellant's contentions in the two cases are inconsistent. The second contention here, that there was no substantial evidence of failure to sound the statutory

warning signals, was ruled against appellant both in the mother's case, supra, 161 S. W. (2d) l. c. 231(9-13) and in the father's case, supra, No. 37,799. The evidence in those cases was similar to that here, and we are satisfied with that ruling.

Appellant's real contention on sole negligence is that the infant's death was not a proximate result of the failure (if any) to sound the crossing signals, because the train was in plain view for a sufficient time to permit the father to stop the truck. His failure to do that, reasons appellant, intervened as the sole cause of the collision. This is the theorized from: (1) the proven relative speeds and distances from the crossing of the train and truck; (2) respondent's expert evidence that the train could have been seen 211.5 feet westward when the truck was 28 feet north of the crossing; (3) and the assumption that both reached the point of collision at the same instant. But we cannot accept the latter fact as conclusively proven, although two of *appellant's* witnesses so testified. Furthermore, on that hypothesis the train would have traveled its distance in less than two seconds. As held in case No. 37,799, the father unquestionably was, guilty of contributory negligence in failing to observe that he was aprpoaching a railroad crossing and to have his truck under control, even though no bell or whistle were sounded. But who can say he would not have done so if these warning signals had been sounded? One of appellant's witnesses, Kolkmeier, testified he had heard an eastbound train whistle from behind the bluff when he was on the highway 337 feet north of the crossing; another, Heitgart, said 200-300 feet; and a third, Bruns, said 30-50 feet. This assignment cannot be sustained.

The third assignment charges error in the trial court's refusal to permit appellant's counsel to cross-examine respondent's witness LaBarge, who from some distance heard the rumble of the freight train and saw it before the collision and after it had stopped. But he did not hear it whistle. Appellant's counsel offered to prove by the witness that just after the train had stopped he asked his companion, Gregory, if the train had whistled. The announced purpose of the offer was to show the witness' doubt and mental uncertainty on that question at the time of the event. On respondent's objection the offer was excluded, and in its brief here appellant assigns error, contending the testimony would have been competent as impeachment, citing Mann v. St. L.-S. F. Ry. Co. (Mo. Div. 2), 72 S. W. (2d) 977, 981(6) which holds: "A witness may always be impeached by showing that he (the witness) made statements inconsistent with his testimony."

We think the testimony was competent and should have been admitted, but we cannot hold its exclusion was prejudicial and reversible error, because the witness freely admitted at the trial (as shown in another part of appellant's brief) that the whistle may have been

sounded without his hearing it, and that he was not positive. During his cross-examination when asked if he was not in considerable doubt as to [830] whether the train had whistled, he answered "Well, as I said, I couldn't say it didn't, and I couldn't say it did whistle, but I never heard it. I couldn't say if it whistled; I would have certainly heard it in a quarter of a mile." This testimony is rather definite on the fact that at the trial the witness thought he did not hear the whistle, if any; and it may be the proffered evidence would in some degree have tended to show the witness was not so certain on that point at the time of the casualty. But it is also subject to the construction that LaBarge asked Gregory whether the train whistled *because* he (LaBarge) had not heard it. In our opinion, while it would have been better to have permitted the interrogation, yet it would not have shaken the witness' story materially or have affected his credibility. For this reason we overrule the assignment.

The fourth assignment of error complains of the admission of testimony from respondent's witnesses Ostmann, Gross and Heitgart, that the railroad crossing was not protected by a gate, warning bells, lights or watchmen. This evidence was introduced as a part of respondent's case in chief under the second count of her petition, which cause of action was abandoned at the close of all the evidence. Appellant contends the evidence should have been excluded because there was an X crossing sign at the grade crossing and no statute requiring said other devices at "an infrequently travelled road out in the open country." Respondent asserts she had the right to prove the lack of these devices in showing the "physical characteristics" of the crossing, the same facts having been shown in the photographs (same as those used in case No. 37,799) which were admitted in evidence without objection. Then she further argues that under the evidence the grade crossing was unusually dangerous and the highway much traveled, in consequence of which it was a question for the jury whether the special devices mentioned should have been installed, citing: Toeneboehn v. St. L.-S. F. Ry. Co., 317 Mo. 1096, 1110, 298 S. W. 795, 801; Homan v. Mo. Pac. Rd. Co., 334 Mo. 61, 74-5, 64 S. W. (2d) 617, 622.

We consider the question close. In this series of cases this is the third time the respondent has got the facts before the jury that there were no watchmen, crossing gates, warning bells or flasher lights at the crossing—and then abandoned that issue and submitted her case on another. We do not agree that she had a right to single out, and thereby comment upon, the absence of such devices merely to show the "physical characteristics" of the crossing. Those facts were immaterial and prejudicial unless it was the duty of the appellant railroad in the exercise of due care to maintain the special devices. The doctrine announced in the Toeneboehn and Homan cases, supra, is that where the crossing is extraordinarily hazardous because of the

congestion or speed of railroad or highway traffic, or where the view and hearing of the highway traveler are seriously interfered with by intervening objects and the crossing is much used, it is a question for the jury whether the railroad company should adopt special protective measures in the exercise of due care.

In this case the crossing was in a rural section. Sight and sound were clear both east and west on the south side of the crossing, and toward the east from the north side. But from the north side it was difficult to see or hear a train approaching from the *west* until it got close. And respondent presented substantial evidence showing that appellant had caused a traffic count at the crossing to be made in 1927; that the traffic had trebled since; that Caulk's Hill road was the principal highway from that neighborhood to the county seat, St. Charles; that there were a country school house and some ten families scattered therethrough; that a number of farmers residing in the upland went over that crossing to rented tracts in the Missouri River bottom; that three school busses and a rural mail carrier used it daily; that some fifty men were working on a Government project cutting willows in the river bottom south of the crossing; and that the employees at two W. P. A. rock quarries in the vicinity, and their rock trucks, would pass over the crossing in going to and returning from work. We think this was enough evidence to take the case to the jury on the question whether the special protective measures should have been taken.

█ The next assignment complains of the admission of testimony from respondent's witnesses Ostmann and Roth, concerning their experiences at the crossing sometime after the casualty, bearing on their ability to hear the *sound* (not whistle) of trains approaching from the west. Appellant's counsel objected to any *experience* of the [831] first witness, Ostmann, but said he would not object to any *tests* made at the crossing. Both witnesses said conditions there were the same when they made their observations as at the time of the casualty. Ostmann related that when he was about 20 feet north of the crossing an eastbound train "shot right in front of me right over the crossing;" and that he did not hear any sound of any kind from the train before he saw it. No roar was audible. Witness Roth said he had been at his mail box and driven south across the track about five feet without hearing any rumble or operating noises of a train, when he looked westward and saw one coming about three telegraph poles away.

In support of its contention on this assignment appellant cites three cases, which are listed in the margin.[1] The Baker case ruled *negligence* of the operatives of the streetcar which injured a plaintiff

[1] Baker v. Met. St. Ry. Co., 181 Mo. App. 392, 394, 168 S. W. 842, 843(2); Coale v. H. & St. J. Rd. Co., 60 Mo. 227, 229; Lester v. K. C., St. J. & C. B. Rd. Co., 60 Mo. 265, 267.

could not be proved by showing other accidents involving other cars of the same company manned by the same or other servants. The Coale and Lester cases held the fact that a particular locomotive had set out fires could not be proven by evidence that sparks had escaped from other locomotives of the same company, equipped with the same type of spark arrester. But both these cases have been overruled.[2] The purpose of the testimony of the two witnesses here was *not* to show that other trains on appellant's railroad had *negligently* failed to *whistle* for the Caulk's Hill crossing; but was to show *operating* noises of such trains could not be heard on the highway behind the hill. That evidence was competent on the actual causative effect of a failure to sound the statutory warning signals—louder noises calculated to give highway travelers better warning of the approach to the train.

Furthermore, appellant's counsel had previously raised the issue by successfully proving on cross-examination of another of respondent's witnesses (Hemsath) that "a freight train makes a lot of noise . . . the puffing of the engine and the exhaust, and the rattle of the metal on the train and the couplers and the noise of the wheels on the tracks;" and appellant later presented the same character of testimony from its witnesses Bruns, Kolkmeier, Heitgart and Eatherton. The latter testified the operating noise of the trains of another railroad south of the Missouri river could be heard on the north side four miles away. It may be that the noise made by running trains will vary some with the gradient of the track and their speed, length, weight and character (passenger or freight) but it is common knowledge that all make operating noises. And if one of appellant's trains passing Caulk's Hill crossing could not be heard around the bluff on the highway that would be some evidence the same would be true of others under the same general conditions.

The point stressed in appellant's brief is not that the trains were different; but that the "observations" or "experiences" of the witnesses Ostmann and Roth "happened months after the accident in question." The brief concedes evidence of these would have been competent if they had been "tests." Call them what you will, we think the evidence was competent, with no dissimilarity suggested except the difference in time. Even on the question as to the distance in which an eight car passenger train could make an *emergency stop* (a much closer question), a majority of the court en banc held testimony was competent which detailed witnesses' observations of *service stops* of other passenger trains of different lengths (11 and 14 cars) at subsequent times and different stations. Moran v. A.,

[2]Hoover v. Mo. Pac. Ry. Co. (Mo. Div. 1), 16 S. W. 480, 482(5); Big River Lead Co. v. St. L., I. M. & S. Rd. Co., 123 Mo. App. 394, 397-8, 400, 101 S. W. 636, 637; Campbell v. Mo. Pac. Ry. Co., 121 Mo. 340, 348 (III), 25 S. W. 936, 937(3), 25 L. R. A. 175, 43 Am. St. Rep. 530.

T. & S. F. Ry. Co., 330 Mo. 278, 291(8), 295 et seq., 48 S. W. (2d) 881, 886 (12, 13), 888 et seq., certiorari denied, 287 U. S. 621, 77 L. Ed. 539, 53 S. Ct. 21. This assignment is overruled.

█ The next assignment of error in the brief charges that "the record in this case is replete with most prejudicial conduct of witnesses, evidence, opening statement and argument by respondent's counsel." Then follows an enumeration of alleged prejudicial statements made by respondent's counsel in his opening statement and in argument; courtroom stage setting and dramatics; and incompetent evidence. [832] The only specifications in the motion for new trial that could be thought even remotely to preserve for review the argument and opening statement of respondent's counsel, were Nos. 22 and 25. The former said a new trial should be granted "because of improper remarks made by the counsel for the plaintiff during the course of the trial." The other specification attacked "the action of counsel for plaintiff in constantly injecting improper matters into the case and in asking improper questions and making improper remarks"—all of which forced appellant's counsel to incur the jury's displeasure by making constant objections. In our opinion these assignments were too indefinite to cover the opening statement and argument. The assignments apparently referred only to matters transpiring during the introduction of evidence; but now appellant seeks to make them embrace everything that occurred from the time the jury was sworn until the cause was submitted for their verdict—a wholesale and altogether indefinite charge.

It was held in Polski v. St. Louis, 265 Mo. 458, 461, 175 S. W. 197, 198, that Sec. 964, R. S. 1939, Mo. R. S. A., sec. 964, requiring *all* motions to be accompanied "by a written specification of the reasons upon which they are founded," applies to motions for new trial in civil actions. This decision has been both followed and disregarded rather waveringly since.[3] But whatever the statutory rule may be, it is clear that there must be *some* common sense requirement about the definiteness of assignments; otherwise no trial or appellate court could tell what the motion for new trial refers to. We find five decisions dealing with this question as applied to errors in the argument of counsel.

In Sibert v. Litchfield & M. Ry. Co. (Mo. Div. 2), 159 S. W. (2d) 612, 618(10) an assignment in the motion for new trial "that the ver-

[3]Wampler v. A., T. & S. F. Ry. Co., 269 Mo. 464, 472, 476, 485, 190 S. W. 908, 909(1), 911(III), 914; K. C. Disinfecting Co. v. Bates, 273 Mo. 300, 304, 201 S. W. 92, 93; Wynne v. Wagoner Undertaking Co., 274 Mo. 593, 597, 204 S. W. 15; Kilpatrick v. Robert, 278 Mo. 257, 264, 212 S. W. 884, 886; State ex rel. United Rys. Co. v. Reynolds, 278 Mo. 554, 557, 213 S. W. 782, 783; State ex rel. St. L. Basket & Box Co. v. Reynolds, 284 Mo. 372, 385, 224 S. W. 401, 404; Greer v. Carpenter, 323 Mo. 878, 882, 19 S. W. (2d) 1046, 1047; Wilhite v. Armstrong, 328 Mo. 1064, 43 S. W. (2d) 422, 423.

dict of the jury was so excessive as to demonstrate that it was the result of passion and prejudice induced by 'argument of plaintiff's counsel during the course of the trial;' '' and that the court should have declared a mistrial ''on account of improper conduct 'and argument of plaintiff's counsel during the course of the trial,' '' was held sufficient to preserve the question of improper argument. In Moll v. Pollack, 319 Mo. 744, 767 (XIX), 8 S. W. (2d) 38, 48(22), appellant complained on appeal of improper argument by respondent's counsel, quoting the argument. The opinion held the assignment untenable because the argument was (italics ours) ''not preserved in the bill of exceptions *and* because the alleged error is not preserved in the motion for new trial.'' The original record in that case on file in this court shows the exact quoted language *was* preserved in the bill of exceptions, but that while the motion for new trial did complain of improper argument, yet the language was general and may not have referred to the words quoted in the opinion.

In Arnold v. May Dept. Stores Co., 337 Mo. 727, 741(7), 85 S. W. (2d) 748, 756(16) an assignment in the brief complained that the lower court erred in permitting plaintiff's counsel to argue certain specified facts which had not been offered in evidence. The opinion says no such assignment was made in the motion for new trial. An inspection of the original record in that case shows the 17th assignment in the motion only charged error in permitting counsel ''to argue the law applicable to the evidence.'' In Stauffer v. Met. St. Ry. Co., 243 Mo. 305, 323, 147 S. W. 1032, 1037(8), the assignment charged error in certain specified remarks of respondent's counsel in argument. The decision said (italics ours) : ''The motion for new trial pretermits all reference to that *incident*. That omission closes the door to an appellate court.'' And in Burns v. R. L. McDonald Mfg. Co., 213 Mo. App. 640, 650, 252 S. W. 984, 988(10) the following is stated: ''It is urged that reversible error was committed by plaintiff's counsel in the closing argument. As to *one* statement now complained of, no mention of it was made in the motion for new trial; hence it is not open for review now.'' The opinion then goes on to say the *other* statement [833] complained of was covered by the motion, and disposes of it on the merits.

These decisions disclose a judicial policy requiring a reasonable degree of definiteness in assignments in a motion for new trial which are aimed at erroneous remarks made in opening statements and the argument of counsel. And while that requirement was not observed in the instant case, yet one of the statements made was followed by evidence on the same point, to which objection was made and preserved. In his opening statement respondent's counsel gave the revolting details of the infant's injuries: that ''the top of his skull was knocked off, and his brains protruded through that opening in the skull. His jaws was broken—(addressing Mrs. Borrson) : Mrs. Borr-

son, will you kindly take the children out of the courtroom?'' Then counsel proceeded to relate the treatment given the infant at the hospital in St. Charles—about putting a pack on the top of his brain saturated with certain drugs, and about the difficulty encountered in setting the jaw bones. Not until that time did appellant's counsel object, saying it was undisputed that the child was killed in the accident. The objection was sustained.

Later the hospital record of St. Joseph's Hospital at St. Charles was introduced, showing that the infant died of a compound fracture of the skull, cerebral evulsions, etc. These were described in detail in the record. It stated ''the child is in extremis. Has lost considerable blood;'' that the skull fracture was the size of a lemon; that there was a cavity in the brain which easily admitted the index finger. Then the record makes statements about washing the brain and dusting it with powder. If a proper objection had been made to this evidence it would be promptly held there was error in admitting it. There was actually no dispute in the case concerning the fatal nature of the infant's injuries, or about the fact that he was riding in the truck with his father and mother when the train struck it; was thrown a long distance; and was taken on the train to St. Charles and later died in the hospital there.

When the hospital record was produced by the Sister who was keeper thereof, the trial court warned respondent's counsel that any inflammatory statements therein would be prejudicial and reversible error. Then respondent's counsel and the court endeavored to go through the record and the court excluded certain parts. Appellant's counsel was asked what part he objected to. He said he did not object to the fact that it *was* the record, or that the infant was treated at the hospital and died there; but that any other matter therein about the nature of the injuries and the treatment would be incompetent, hearsay, and could be testified to only by a physician. Then he said he objected to the whole record except the fact that the infant was in the hospital and—''had such injury. The proper way for him to do that is put a physician on the stand. That is hearsay stuff.'' The trial court expressed the opinion that the first page of the record was admissible. Being asked what part he objected to appellant's counsel answered, the word ''expired,'' and ''Religion—M. B.'' The latter words were cut out but the word ''expired'' was left in. Then he objected to the sentence ''struck by a train while riding in a truck;'' and that was omitted. Next, attention was called to the fact that the concluding portion of the record recited the infant was ''Admitted 12/30/39,'' when the correct date was 12/20/39. Appellant's counsel said he would concede the infant entered the hospital on December 20, and that the date December 30 was erroneous. With his consent the Sister was then excused, taking the hospital record with her.

We find nothing in the court record here on appeal showing that appellant objected to the admission of the part of the hospital record finally culled out, on the ground that it was inflammatory and immaterial. His objection, so far as any was made, rested on the ground that the record would be hearsay and that the proof ought to be made by a physician. There was no proof whether the hospital was a public institution, but that makes no difference under Sec. 9777, R. S. 1939, Mo. R. S. A., sec. 9777. The ground assigned by appellant's counsel had long before been disallowed and the ruling made that such hospital records are competent to show the disease suffered by the patient, in Kirkpatrick v. Wells, 319 Mo. 1040, 1045(IV), 6 S. W. (2d) 591, 593(4, 5), and Vermillion v. Prudential Ins. Co., 230 Mo. App. 993, 999, 93 S. W. (2d) 45, 48(1).

Another assignment complains of the following. When the respondent Alice Borrson testified, her counsel was making proof that she had been appointed administratrix [834] by the Probate Court of *St. Louis* county. Appellant objected, contending that court had no jurisdiction because the infant was a resident of and died in *St. Charles* county; and that respondent therefore had no legal capacity to prosecute the action. It developed also that she had later been appointed administratrix in St. Charles county, but not until after the bringing of the suit. The objection was overruled. Then appellant's counsel cross-examined her, inquiring: under which appointment she was "seeking to recover the money from the defendant;" whether she hadn't gone to the Probate Court of St. Charles county (rather than St. Louis county) to be appointed as guardian of the minor children in the two other suits; and whether there was any reasonable probability the deceased two year old infant could furnish support or maintenance for his heirs (his elder surviving sisters and brother) during their minority—this relating to the cause of action in the second count of the petition, under the *compensatory* death statute, which at that stage of the trial had not yet been abandoned.

Thereupon respondent's counsel took over the witness on re-direct examination, and asked her whether she was seeking to recover in this action for her *personal* benefit or for "these three children." On objection by appellant, counsel for respondent asserted he was rebutting the inference or imputation in the preceding cross-examination that respondent was seeking the recovery for *herself*. The court overruled the objection. Then respondent's counsel proceeded to ask the witness these two questions: "Now, lets go into the matter of that appointment in St. Charles county as administratrix of Raymond Arthur White (the infant decedent). Has the railroad company ever paid anything to you as administratrix of Raymond Arthur's estate as a result of the appointment in St. Charles county?" An objection was overruled, and the witness answered in the negative. Then the

witness was asked if the railroad had ever *offered* to pay her anything in the above capacity, and again over objection she answered No. Then finally respondent's counsel inquired: "Now, with reference to the action which was brought in behalf of the children and by yourself in the capacity as guardian of the children, for the death, first of the mother, have either you or the children received anything from the railroad company from that action? A. No."

Appellant objected and moved that the jury be discharged "because of that prejudicial influence that Mr. Landau is attempting to bring into this case." This last question was asked, be it remembered, about the deceased *mother's* case then pending on motion for new trial, and later appealed to this court. The Court said "Let's go back." Thereupon the court and counsel on both sides repaired to the Court's chambers, and upon their return the motion was overruled. We have read and reread respondent's brief to find what valid defense her counsel could make of this last question. The only *excuse* offered—we say excuse advisedly—is, that it was improper for appellant's counsel to make a collateral attack on respondent's appointment as administratrix in St. Louis county, and to cast the imputation that she was attempting to recover the children's money for herself. Then respondent's brief continues: "To offset the mischief achieved by defendant's improper introduction of this extraneous issue, plaintiff was put to the necessity of removing the unfair and untrue insinuation by showing that the children had not received any payment from the other cases or from the appointment in St. Charles county." But that explanation does not explain. We think the error was reversible.

We find no fault with respondent's measure of recovery instruction, No. 8, nor with the refusal of appellant's instruction No. 8, which would have told the jury that the positive testimony of a witness who said he heard the whistle sound is of greater weight than the negative testimony of an equally credible witness that he did not hear it. There was no error in the refusal of appellant's instruction No. 16, which declared there was *no evidence* that either a gate or a bell or a watchman was necessary at the crossing. The same is true of appellant's refused instruction No. 14, which would have stated there was *no evidence* that the train was traveling at an excessive rate of speed. One or two witnesses said it was going very fast; on appellant's own theory its speed was a pertinent factor in determining whether and where the deceased truck driver might have seen it in time to avert the collision; and so far as this record shows, the jury never knew one of [835] respondent's original but abandoned contentions was that it was traveling at a negligently excessive speed. Respondent's counsel did not so claim in his opening statement.

Because of the erroneous redirect examination dealt with in the second, third and fourth paragraphs last preceding, the judgment is reversed and the cause remanded. All concur.